In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-1089 and 99-3252

Jennifer Dormeyer,

Plaintiff-Appellant,

v.

Comerica Bank-Illinois, et al.,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 4805--David H. Coar, Judge.

Argued February 11, 2000--Decided July 24, 2000

 Before Posner, Chief Judge, and Manion and Kanne,
Circuit Judges.

 Posner, Chief Judge. The plaintiff, who worked as
a teller for the defendant bank between April
1994 and February 1996, brought suit against the
bank and related entities unnecessary to discuss
charging violations of the Family and Medical
Leave Act, 29 U.S.C. sec.sec. 2601 et seq., the
Pregnancy Discrimination Act, 42 U.S.C. sec.
2000e(k), and the Fair Labor Standards Act, 29
U.S.C. sec.sec. 206(a), 207(a), 215(a)(2). There
were other charges as well, but they have fallen
by the wayside. The defendant made an offer of
judgment of $1,152 on the FLSA count (which
sought overtime pay), and this was accepted. The
district court granted summary judgment for the
defendant on the other counts. The plaintiff then
sought almost $35,000 in costs and attorneys'
fees under the FLSA, which the judge cut down to
$6,216. The appeals challenge both the dismissal
of the FMLA and PDA counts and the reduction in
the amount of fees awarded for the successful
prosecution of the FLSA count.

 The plaintiff had a problem of absenteeism. The
bank required her to attend a "coaching session"
to help her overcome the problem. That was in
August 1995. The problem continued and on January
26, 1996, roughly three weeks after she had
become pregnant, she received a written warning
about her excessive absences. She received a

second such warning on February 12 and a third on February 21. All to no avail; she was AWOL again on February 23 and 24 and was fired two days later.

Of a total of 20 unexcused absences between March 6, 1995, and the date of her discharge, nine occurred after she became pregnant, and she attributes these absences to severe morning sickness, although there is little medical substantiation of this attribution. On January 8, 1996, shortly after she became pregnant, she requested leave under the FMLA on the basis of her morning sickness. The defendant did not respond to the request, and this nonresponse is the basis of her FMLA claim. Although it is conceded that she did not satisfy the requirement for eligibility for leave under the Act that she have worked at least 1,250 hours during the 12 months preceding the day on which she wanted to take family leave, 29 U.S.C. sec. 2611(2)(A)(ii) (it is unclear by how much she fell short), she appeals to a regulation of the Department of Labor that waives statutory eligibility in cases in which the employer fails to respond promptly to a request for family leave. The regulation provides, so far as bears on this case, that "if the employer fails to advise the employee whether the employee is eligible [for family leave] prior to the date the requested leave is to commence, the employee will be deemed eligible." 29 C.F.R. sec. 825.110(d).

As several district courts have found (there are no appellate decisions), the regulation is invalid. E.g., McQuain v. Ebner Furnaces, Inc., 55 F. Supp. 2d 763, 773-76 (N.D. Ohio 1999); Seaman v. Downtown Partnership of Baltimore, Inc., 991 F. Supp. 751, 754 (D. Md. 1998); Wolke v. Dreadnought Marine, Inc., 954 F. Supp. 1133, 1135-38 (E.D. Va. 1997). Although the Department of Labor has, like other administrative agencies, the authority to issue regulations to carry out the duties that Congress has assigned to it in the Family and Medical Leave Act, 29 U.S.C. sec. 2654, it has no authority to change the Act. But that is what the regulation tries to do. It does not address an interpretive issue that the statute leaves open, and so the principle of the Chevron case is not in play. E.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-44 (1984); INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999); NLRB. v. GranCare, Inc., 170 F.3d 662, 666 (7th Cir. 1999) (en banc); City of Chicago v. FCC, 199 F.3d 424, 428 (7th Cir. 1999). The statutory text is perfectly clear and covers the issue. The right of family leave is conferred only on employees who have worked at least 1,250 hours in the previous 12 months. Yet under the regulation

a worker who had worked 8 hours before seeking family leave would be entitled to family leave if the employer neglected to inform the employee promptly that he or she was ineligible. And this regardless of whether the employee had incurred any detriment as a result of the employer's silence.

The last point is critical. If detrimental reliance were required, the regulation could be understood as creating a right of estoppel (specifically a right to estop, that is, forbid, the employer to raise a defense of ineligibility for the statutory benefits), and such a right might be thought both consistent with the statute and a reasonable method of implementing it, and so within the Department's rulemaking powers. Like other equitable doctrines, the doctrine of estoppel is invoked in a variety of statutory contexts without reference to particular statutory language. True, if the statute creates or excludes a right to plead estoppel, the creative power of the administering court or agency is suspended. But there is nothing in the Family Leave and Medical Act that relates to misleading eligibility notices or absences of notice; so far as notice is concerned, the statute merely requires the employer to post a general summary of the Act in the workplace. 26 U.S.C. sec. 2619. We do not read this provision to exclude the application of the doctrine of an estoppel in an appropriate case. And so an employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave. See, e.g., Rager v. Dade Behring, Inc., 210 F.3d 776, 778-79 (7th Cir. 2000); Athmer v. C.E.I. Equipment Co., 121 F.3d 294, 296-97 (7th Cir. 1997); General Electric Capital Corp. v. Armadora, S.A., 37 F.3d 41, 45 (2d Cir. 1994).

The plaintiff has made no effort to establish the elements of an estoppel, however, and anyway the regulation on which she relies to avoid the 1,250-hours requirement is not limited to circumstances in which an employer might be estopped to deny eligibility because his conduct had induced detrimental reliance by the employee. The regulation allows an employee to claim benefits to which she is not entitled as a matter of law or equity, thus conferring a windfall by extinguishing the employer's defense without any basis in legal principle. The challenged regulation is not only unauthorized; it is unreasonable.

We move on to the plaintiff's claim under the

Pregnancy Discrimination Act. The Act forbids discrimination against an employee on account of her being pregnant, and of such discrimination the only evidence in this case, evidence that falls short of making out a case that can withstand summary judgment for the employer, is some ugly comments about the plaintiff's pregnancy made by an employee who was not in the chain of command of the plaintiff and did not (so far as appears) influence in any way the decision to fire her. "The fact that someone who is not involved in the employment decision of which the plaintiff complains expressed discriminatory feelings is not evidence that the decision had a discriminatory motivation." Hunt v. City of Markham, No. 99-1331, 2000 WL 968540, at *2 (7th Cir. July 11, 2000) (emphasis in original). Compare Sheehan v. Donlen Corp., 173 F.3d 1039, 1044-45 (7th Cir. 1999).

 The plaintiff was fired because of her absenteeism, not because of her pregnancy. There was a relation, insofar as some of the absences may have been due to morning sickness, which was, of course, a consequence of her pregnancy. But the Pregnancy Discrimination Act does not protect a pregnant employee from being discharged for being absent from work even if her absence is due to pregnancy or to complications of pregnancy, unless the absences of nonpregnant employees are overlooked. Troupe v. May Dept. Stores Co., 20 F.3d 734, 738-39 (7th Cir. 1994); Marshall v. American Hospital Ass'n, 157 F.3d 520, 526 (7th Cir. 1998); Armindo v. Padlocker, Inc., 209 F.3d 1319 (11th Cir. 2000) (per curiam); In re Carnegie Center Associates, 129 F.3d 290, 296-97 (3d Cir. 1997); Fisher v. Vassar College, 70 F.3d 1420, 1448 (1995) reheard en banc on other grounds, 114 F.3d 1332 (2d Cir. 1997). And of that there is no evidence.

 It might seem that a company's policy on absenteeism might be attacked from the direction of disparate impact, a permissible theory of liability under the Pregnancy Discrimination Act, e.g., Troupe v. May Dept. Stores Co., supra, 20 F.3d at 738; Scherr v. Woodland School Community Consolidated Dist. No. 50, 867 F.2d 974, 979 (7th Cir. 1988); Lang v. Star Herald, 107 F.3d 1308, 1314 (8th Cir. 1997); Garcia v. Woman's Hospital of Texas, 97 F.3d 810, 813 (5th Cir. 1996), if it could be shown that the policy weighed more heavily on pregnant employees than on nonpregnant ones and that it was not justified by compelling considerations of business need. But such an argument would not succeed. The concept of disparate impact was developed and is intended for cases in which employers impose eligibility requirements that are not really necessary for the job for which the applicant is being hired,

such as requiring that applicants for a job as a dishwasher have a high school education. The statute makes this clear, see 42 U.S.C. sec. 2000e-2(k)(1)(A)(i) ("an unlawful employment practice based on disparate impact is established under this subchapter only if a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity"), as do the cases interpreting it. See, e.g., Finnegan v. Trans World Airlines, Inc., 967 F.2d 1161, 1164 (7th Cir. 1992) ("the concept of disparate impact was developed for the purpose of identifying situations where, through inertia or insensitivity, companies were following policies that gratuitously--needlessly--although not necessarily deliberately, excluded black or female workers from equal employment opportunities"); Lanning v. Southeastern Pennsylvania Transportation Authority, 181 F.3d 478, 489 (3d Cir. 1999) ("a discriminatory cutoff score is impermissible unless shown to measure the minimum qualifications necessary for successful performance of the job in question"). The argument here is not that the employer has adopted rules or practices that arbitrarily exclude pregnant women, but that the employer should be required to excuse pregnant employees from having to satisfy the legitimate requirements of their job. It is an argument for subsidizing a class of workers, and the concept of disparate impact does not stretch that far. Troupe v. May Department Stores Co., supra, 20 F.3d at 738; Urbano v. Continental Airlines, Inc., 138 F.3d 204, 207-08 (5th Cir. 1998); Armstrong v. Flowers Hospital, Inc., 33 F.3d 1308, 1317 (11th Cir. 1994). Nor would pregnant women, or women in general, benefit from such a stretch. Firms would be deterred from employing women of childbearing age if required to overlook the inability of a particular woman, because of complications of pregnancy, to do the work for which she had been hired.

We turn to the plaintiff's appeal from the award of attorneys' fees, which she contends was too meager. Her appeal brief (there is no reply brief) is a remarkable document. It is only five pages long, of which the argument section occupies not quite two pages entirely given over to truisms and conclusions. The perfunctory character of the appeal, which alone would justify an affirmance, Kelly v. EPA, 203 F.3d 519, 522 (7th Cir. 2000); Jones Motor Co. v. Holtkamp, Liese, Beckemeier & Childress, P.C., 197 F.3d 1190, 1192 (7th Cir. 1999); JTC

Petroleum Co. v. Piasa Motor Fuels, Inc., 190 F.3d 775, 780-81 (7th Cir. 1999), is remarkable rather than merely lamentable because of the serious accusations made by the district judge against the plaintiff's attorney, Ernest T. Rossiello, in support of the judge's decision to cut down the fees and costs sought by some 80 percent. Citing several previous judicial opinions criticizing (in one case actually sanctioning) Mr. Rossiello for his fee requests or affirming stiff cuts in the requested fees, Shea v. Galaxy Lumber & Const. Co., Ltd., No. 94 C 906, 1999 WL 138791, at *3 (N.D. Ill. Mar. 2, 1999) ("this case is not the first time a federal district court has suspected a possible manipulation or abuse of billing practices with regard to Shea's counsel [Rossiello] in a FLSA case"); Herrejon v. Appetizers And, Inc., No. 97 C 5149, 1999 WL 116598, at *1 (N.D. Ill. Feb. 22, 1999); Campbell v. HSA Managed Care Systems, Inc., No. 97 C 1622, 1998 WL 417505 (N.D. Ill. July 21, 1998); Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 406-11 (7th Cir. 1999); Spegon v. Catholic Bishop of Chicago, 175 F.3d 544 (7th Cir. 1999), but missing still others (again including one case in which he was actually sanctioned), e.g., Connolly v. National School Bus Service, Inc., 177 F.3d 593, 598 (7th Cir. 1999); Scott v. Sunrise Healthcare Corp., No. 95 C 1277, 1999 WL 787624, at *5 (N.D. Ill. Sep. 23, 1999) ("The fee petition in this case, seeking $100,000 in fees and costs for a $600 recovery is, to put in mildly, unreasonable and irresponsible. The amount requested is absurd. No effort has been made by plaintiff's counsel to segregate the fees attributable to the successful FLSA claim"), the judge accused Rossiello, just as the judge in Scott had done, of engaging in the dishonest practice of joining to small valid claims, here the plaintiff's FLSA claim, large invalid and even frivolous claims, and seeking a large award of attorneys' fees for services ostensibly devoted to the small claim but actually devoted to the large.

In his application for fees, Rossiello allocated 124 hours, constituting half the total time that he and his associates put in on the plaintiff's entire case, to the FLSA claim, even though it was a tiny claim which required little more than the record of the days and hours worked by the plaintiff and which the defendant did not resist. The defendants had made an offer of judgment for the full amount sought before trial, which the plaintiff accepted. And before the offer was made the parties had engaged in only the most limited discovery on the claim, consisting of one request for documents, a single interrogatory, and ten or so minutes of deposition time. The judge was rightly aghast at the allocation of half the

total lawyer time to the FLSA claim. A similar problem attended Rossiello's allocation of costs.

 In his appeal brief, Rossiello (who signed the brief) does not deny the judge's accusations. Although he complains without elaboration that the judge should have allowed him a higher hourly fee, he says nothing about the judge's accusing him of submitting what amounts to a fraudulent claim of attorneys' fees and of doing this, moreover, in case after case. In these circumstances of confession by silence to serious charges of professional misconduct, we not only affirm the district court's order denying Rossiello the fees and costs sought; we also order him to show cause within 14 days of the date of this order why he should not be sanctioned for filing a frivolous appeal from the district court's fee order. Fed. R. App. P. 38; Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 938 (7th Cir. 1989) (en banc); United States v. Insurance Consultants of Knox, Inc., 187 F.3d 755, 761-62 (7th Cir. 1999). In addition we are referring the question of his improper and possibly fraudulent billing practices to the executive committee of the United States District Court for the Northern District of Illinois to consider whether to institute disciplinary proceedings against him.

Affirmed.