Robin Amaro BRUNGART, Plaintiff-Appellant,

v.

BELLSOUTH TELECOMMUNICATIONS, INC., Defendant-Appellee.

No. 99-14472.

United States Court of Appeals,

Eleventh Circuit.

Oct. 24, 2000.

Appeal from the United States District Court for the Northern District of Alabama.(No. 98-02558-CV-AR-S), William M. Acker, Jr., Judge.

Before CARNES, MARCUS and FARRIS[*], Circuit Judges.

CARNES, Circuit Judge:

Robin Amaro Brungart appeals from the district court's grant of summary judgment in favor of BellSouth Telecommunications, Inc. ("BellSouth"), on her claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Brungart argues she was wrongfully denied FMLA leave pursuant to 29 C.F.R. § 825.110(d) and also that BellSouth retaliated against her in violation of the FMLA. This appeal primarily presents two issues: (1) whether that part of the notice provision of the § 825.110(d) regulation which purports to create eligibility based upon the failure of an employer to notify the employee of ineligibility within a specified time is a valid interpretation of the FMLA; and (2) whether termination of an employee the day before the commencement of scheduled FMLA leave always creates a genuine issue of material fact about the causal connection element for a prima facie case of discrimination. We answer both questions in the negative.

## I. BACKGROUND[1]

In February 1991 Robin Amaro Brungart began working for BellSouth in Florida as a service representative. On December 1, 1994 she began an unpaid leave of absence which lasted until September 1996. On September 23, 1996, Brungart was transferred to a service representative position for BellSouth in Birmingham, Alabama, and began a three week training program.

---

[*]Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]The facts we set out are drawn from the evidence in the summary judgment record viewed in the light most favorable to the party against whom summary judgment was granted. *See Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir.1999) (internal citations omitted).

On December 2, 1996, Brungart's mother was hospitalized for emergency heart surgery. Brungart told her supervisors that she wanted to apply for FMLA leave effective immediately, and she submitted an FMLA leave application form, all on that same day.

Later that day, Brungart attempted to call one of her supervisors, Peggy Thompson, but was unable to reach her. Afterward, Thompson called Brungart who was at the hospital, and Brungart informed her that she would be off from work for the next ten days due to her mother's condition. Thompson told Brungart to keep in touch with the office every few days. Brungart did so, but on December 10, 1996, Thompson called Brungart and told her that she had been listed as a "no report" because she had not called in every day. Brungart responded that she had not been told to call in every day. The next day, Brungart called Thompson to let her know that she would not be at work due to her mother's condition. Brungart was written up for not calling in that day before her shift started. When Brungart eventually returned to work, she received a written reprimand for her absence.

By letter dated January 16, 1997, BellSouth denied Brungart's December 2, 1996 request for FMLA leave. The grounds BellSouth gave for the denial was that Brungart had not worked 1,250 hours in the past 12 months, which is the minimum number of hours the FMLA requires before an employee is entitled to statutorily protected leave.

As a service representative, Brungart's job was to answer calls from customers wishing to discuss service orders. To maintain customer service, BellSouth measures the amount of time service representatives are actually available to take calls compared with the amount of time they are scheduled to do so. Because it involves adhering to a schedule, this measurement is called the adherence percentage. Service representatives in Birmingham were initially required to meet an adherence percentage of 93, but that percentage was increased in early 1997 to 94.5.

Brungart did not meet the required adherence percentage for October through December, the three full months that she worked at BellSouth in 1996. Because BellSouth has a grace period for employees coming out of training, Brungart was not disciplined in 1996 for failing to meeting her adherence percentages. However, Brungart never met the required adherence percentage at any time before she was terminated in July of 1997. BellSouth's discipline process consists of progressive steps: counseling, warning, suspension, and finally termination of employment. Brungart received a warning and was suspended twice during 1997 because of her failure to meet adherence percentage requirements.

Some time in May or June of 1997, Brungart again applied for FMLA leave, this time so that she

could have knee surgery. BellSouth's FMLA administrator approved three weeks of leave to begin July 10, 1997.

In early July, Calvin Nelson became the new top tier manager of the service representatives in Birmingham. He oversaw Vicky Capuzzo, who was Brungart's immediate supervisor. Also in early July, Capuzzo asked Brungart to resign, but Brungart refused. After the June adherence percentages were reported, Capuzzo told Nelson that Brungart had not met her required adherence objectives for June and also informed Nelson about Brungart's previous discipline (her warning and two suspensions during 1997) for failure to meet the adherence objectives.

Nelson made the decision to terminate Brungart. Nelson testified in his deposition that when he decided to terminate Brungart, he had no knowledge of her scheduled FMLA leave, and there is no evidence to contradict his testimony about that. Brungart was terminated on July 9, 1997, the day before she was to begin her requested leave for the knee surgery. She was told that she was being terminated for failure to meet BellSouth's adherence requirements.

Brungart sued BellSouth in a complaint which, after amendment, contained four counts. Count 1 claimed that BellSouth's termination of Brungart on July 9, 1997 had violated the FMLA, because it occurred as a result of her having requested leave to which she was entitled under the FMLA and which was scheduled to begin on July 10, 1997. Count 2 claimed that BellSouth had violated the FMLA by denying Brungart leave on an earlier occasion, leave she had requested in December of 1996. At that time, Brungart had not been employed the minimum number of hours necessary to make her eligible for FMLA leave, but she claimed to be entitled to it anyway, because BellSouth had failed to respond to her request for leave within two days. Count 3 claimed that BellSouth violated Brungart's rights under the FMLA by not giving her regular notice of her rights and responsibilities under the FMLA, and by not presenting her with written notice granting or denying her December 1996 leave request. Count 4 claimed that BellSouth had violated the Labor Management Relations Act in various ways.

Both parties filed motions for summary judgment. The district court granted BellSouth's motion for summary judgment on all counts. Brungart appeals only the district court's grant of summary judgment to BellSouth on the three FMLA counts.

## II. DISCUSSION

We review the district court's grant of summary judgment *de novo*. *See Allison,* 184 F.3d at 1306. Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving

party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We begin with Count 2, because it concerns events that are first in time.

## A. WRONGFUL DENIAL OF LEAVE

In Count 2 of her complaint, Brungart claimed that BellSouth violated the FMLA with respect to the FMLA leave request she submitted on December 2, 1996 for her mother's emergency heart surgery. Congress enacted the FMLA "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1). The FMLA entitles eligible employees to take up to 12 weeks of leave during any 12-month period for medical reasons, for the birth or adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition. *See* 29 U.S.C. § 2601(b)(2); 29 U.S.C. § 2612(a)(1). Not all employees are eligible for leave under the FMLA. The statute defines those who are as follows:

> The term "eligible employee" means an employee who has been employed—
>
> > (i) for at least 12 months by the employer with respect to whom leave is requested ...; and
> >
> > (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(A). It is undisputed that at the time of her leave request in December of 1996 Brungart had not worked 1,250 hours for BellSouth during the previous 12-month period.

Brungart's theory behind Count 2 is that BellSouth's failure to inform her of her eligibility for FMLA leave within the time required by 29 C.F.R. § 825.110(d) made her eligible for the leave, or at least should have prevented BellSouth from denying that she was eligible, and as a result its denial of leave was wrongful. Brungart did not give notice of her need for leave more than two business days prior to the date she wanted to commence the leave, but instead applied for leave to begin effective immediately. In those circumstances, the relevant portion of § 825.110(d) is the following:

> Where the employee does not give notice of the need for leave more than two business days prior to commencing leave, the employee will be deemed to be eligible if the employer fails to advise the employee that the employee is not eligible within two business days of receiving the employee's notice.

*Id.*[2]

---

[2]Section 825.110(d) provides in full:

> The determinations of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months and has been employed by the employer for a total of at least 12 months must be made as of the date leave commences. If an employee notifies

The validity of § 825.110(d) is squarely presented in this case. It is undisputed that in December 1996 when Brungart applied for medical leave to begin immediately she was statutorily ineligible for FMLA leave, because she had not worked for BellSouth the requisite 1,250 hours within the previous 12-month period. Likewise, it is undisputed that BellSouth failed to advise her of her ineligibility for FMLA leave until more than a month after it received her application for it. If the § 825.110(d) regulation is valid, by virtue of it Brungart is to be deemed eligible for FMLA leave in December 1996, but if the regulation is invalid there is no basis for her eligibility at that time. The district court held that BellSouth was entitled to summary judgment on this count because § 825.110(d) was "unconstitutional to the extent that it converts ineligible employees into eligible employees, contrary to the express language of the FMLA."

The only circuit to have addressed the issue so far is the Seventh, which held that this part of the § 825.110(d) regulation is invalid. *See Dormeyer v. Comerica Bank-Illinois,* 223 F.3d 579, 582 (7th Cir.2000).[3] We could not agree more. As the Seventh Circuit explained: "The statutory text is perfectly clear and covers the issue. The right of family leave is conferred only on employees who have worked at least 1,250 hours in the previous 12 months." *Id.* To put it in *Chevron* terms, "Congress has directly spoken to the precise question at issue," which is eligibility for the medical leave rights created in the statute, and because "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense*

> the employer of the need for FMLA leave before the employee meets these eligibility criteria, the employer must either confirm the employee's eligibility based upon a projection that the employee will be eligible on the date leave would commence or must advise the employee when the eligibility requirement is met. If the employer confirms eligibility at the time the notice for leave is received, the employer may not subsequently challenge the employee's eligibility. In the latter case, if the employer does not advise the employee whether the employee is eligible as soon as practicable (*i.e.,* two business days absent extenuating circumstances) after the date employee eligibility is determined, the employee will have satisfied the notice requirements and the notice of leave is considered current and outstanding until the employer does advise. If the employer fails to advise the employee whether the employee is eligible prior to the date the requested leave is to commence, the employee will be deemed eligible. The employer may not, then, deny the leave. Where the employee does not give notice of the need for leave more than two business days prior to commencing leave, the employee will be deemed to be eligible if the employer fails to advise the employee that the employee is not eligible within two business days of receiving the employee's notice.

[3]In addition to the district court in this case, four other district courts have addressed this issue, and all but one of them have reached the same conclusion. *See McQuain v. Ebner Furnaces, Inc.,* 55 F.Supp.2d 763 (N.D.Ohio 1999) (holding § 825.110(d) to be invalid); *Seaman v. Downtown Partnership of Baltimore, Inc.,* 991 F.Supp. 751 (D.Md.1998) (same); *Wolke v. Dreadnought Marine, Inc.,* 954 F.Supp. 1133 (E.D.Va.1997) (same); *but see Miller v. Defiance Metal Products, Inc.,* 989 F.Supp. 945 (N.D.Ohio 1997) (holding § 825.110(d) to be valid).

*Council, Inc.,* 467 U.S. 837, 842—43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). Congress could have, but did not, confer the right to family medical leave on any employee who did not receive a prompt response from the employer to her leave request.

There is no ambiguity in the statute concerning eligibility for family medical leave, no gap to be filled. Instead, the Department of Labor in this regulation has attempted to pry apart the clear words of the act in order to create a gap into which it can wedge its policy preference. We understand the Department's motive, which is to further the goals of the act by forcing employers to respond to leave requests within a reasonable period of time. But when an administrative agency seeks to improve legislation by altering the basic coverage provisions that Congress has written into the law, it has gone too far. The rule of law in general, and separation of powers principles in particular, require that such administrative hubris be reigned in, and that the task of improving the basic provisions of statutes be left to the same body that wrote them in the first place.

We note that our conclusion here is strongly supported by our decision last year in *McGregor v. Autozone, Inc.,* 180 F.3d 1305 (11th Cir.1999). In that case this Court invalidated another Department of Labor regulation, one which provided that if an employer failed to give prospective notice that an absence was being counted as FMLA leave, the leave taken could not be counted against the employee's 12-week entitlement under the FMLA, with the result that the employer would be required to give a total of more than 12 weeks of leave. *See id.* at 1307-08 (citing 29 C.F.R. § 825.208(c); 29 C.F.R. § 825.700(a)). We explained that the regulation "converts the statute's minimum of federally-mandated unpaid leave into an entitlement to an additional 12 weeks of leave unless the employer specifically and prospectively notifies the employee that she is using her FMLA leave." *Id.* at 1308. Because the FMLA itself "does not suggest that the 12 week entitlement may be extended," we held that the regulation was contrary to the statute and therefore invalid and unenforceable. *Id.* That reasoning fits here.

For all of these reasons, we hold that 29 C.F.R. § 825.110(d) is invalid insofar as it purports to extend the eligibility provisions of the FMLA to an otherwise ineligible employee who is not promptly notified after requesting leave that she is ineligible for it under the statute.[4] Because Brungart's sole theory of eligibility

---

[4]In dicta the Seventh Circuit has speculated about the possibility of an employer being estopped from denying an employee's eligibility for FMLA leave if the employee reasonably relied to her detriment on the employer's failure to notify her promptly of her ineligibility. *See Dormeyer,* 223 F.3d at 582. We do not have those facts before us, because Brungart did not reasonably rely to her detriment upon BellSouth's failure to respond more promptly to her leave request. It is true that Brungart was written up for taking

for FMLA leave involved in Count 2 (the December 1996 request) fails, the district court did not err in granting summary judgment against her on that count.

## B. RETALIATORY DISCHARGE

Although she was not eligible for FMLA leave in December 1996, which is the time involved in Count 2 of the complaint, Brungart had worked sufficient hours to become eligible before July of 1997, which is the time involved in Count 1 of the complaint. In that count Brungart claimed that BellSouth violated the FMLA by terminating her after her July 1997 application for FMLA leave, and in interference with that exercise of her rights under the statute. In her brief, Brungart characterizes this as a retaliation claim.[5]

In addition to providing specified employees the right to certain leave, the FMLA also protects employees from being discriminated against by their employers for exercising or attempting to exercise the rights it provides. The statute makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter [of the FMLA]." 29 U.S.C. § 2615(a)(1). The statute also makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter [of the FMLA]." 29 U.S.C. § 2615(a)(2). Additionally, "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." 29 C.F.R. § 825.220(c).

When evaluating a claim of retaliation under the FMLA, in the absence of direct evidence of discrimination on the part of the employer, we apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for evaluating Title VII retaliatory discharge claims. *See Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1283 (11th Cir.1999); *see also King v. Preferred Technical Group,* 166 F.3d 887, 891-92 (7th Cir.1999)

---

unauthorized leave, but she left work immediately and there is no evidence she would not have taken any leave to be with her mother if she had been informed right away by BellSouth that she was not entitled to it. While the evidence viewed in the light most favorable to Brungart indicates that she might not have been gone as long had she been informed earlier that she was not eligible for FMLA leave, she conceded in deposition that she would have taken some leave anyway. And there is no evidence Brungart would not have been written up just the same if she had returned earlier. We decline to speculate about what the result might be if there had been facts to support a detrimental reliance argument. *See McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1314-15 (11th Cir.1998) (Carnes, J., concurring) (noting that dicta can be useful, but explaining why views expressed in dicta are less reliable than those embodied in holdings).

[5]The statute itself uses the language of interference, restraint, denial, discharge, and discrimination, not retaliation. But nomenclature counts less than substance. And the substance of the FMLA provisions as they concern this case is that an employer may not do bad things to an employee who has exercised or attempted to exercise any rights under the statute. Asking for medical leave is exercising or attempting to exercise a right under the statute, and being fired is a bad thing.

("We find no reason to treat an intent-based FMLA claim ... any differently than other retaliatory discharge cases."); *Chaffin v. John H. Carter Co., Inc.* 179 F.3d 316, 319 (5th Cir.1999) (applying the *McDonnell Douglas* framework to evaluate claims that an employee was penalized for exercising rights protected by the FMLA in the absence of direct evidence of discrimination); *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 160 (1st Cir.1998) (same); *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997) (same).

In order to establish a prima facie case of retaliatory discharge or retaliation using the *McDonnell Douglas* framework, a plaintiff must show that (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action. *See Parris v. Miami Herald Pub'g Co.,* 216 F.3d 1298, 1301 (11th Cir.2000); *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000) (Title VII); *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1336 (11th Cir.1999) (ADA).

BellSouth does not dispute that Brungart has satisfied the first two elements of the prima facie case. Brungart did engage in protected conduct by applying for FMLA leave for knee surgery, and she also suffered the adverse employment action of being discharged. The dispute is about whether Brungart came forth with sufficient evidence to create a genuine issue of fact that her application for FMLA leave caused the termination of her employment with BellSouth, which means: could a jury reasonably find from the evidence presented at the summary judgment stage that Brungart was fired because she sought FMLA leave? The district court granted summary judgment to BellSouth because it concluded that Brungart failed to create a genuine issue of fact about causation, that no reasonable jury could find a causal link between her request for leave and her termination.

Brungart argues that the fact she was fired the day before she was scheduled to begin her medical leave on July 10, 1997 is sufficient to create a genuine issue of material fact about causal connection, the third element of the prima facie case. To establish the causal connection element, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.' " *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1354 (11th Cir.1999) (quoting *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985)). In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action. *See Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993); *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir.1997) ("[I]n a case involving a corporate defendant the plaintiff must

show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression...."). That requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him. As with most facts, the defendant's awareness can be established by circumstantial evidence. *See Goldsmith,* 996 F.2d at 1163.

The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. *See Gupta,* 212 F.3d at 590; *Bechtel Constr. Co. v. Secretary of Labor,* 50 F.3d 926, 934 (11th Cir.1995) ("Proximity in time is sufficient to raise an inference of causation.") However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct. *See Clover,* 176 F.3d at 1355—56. In *Clover* the plaintiff, who brought a Title VII retaliation claim, had been informed the day after she engaged in protected conduct that she was going to be terminated, and later she was terminated. *Id.* at 1349. Notwithstanding the close temporal proximity between the protected conduct and the initial decision to terminate the plaintiff, we reversed the district court's denial of the defendant's motion for judgment as a matter of law on the retaliation claim. *See id.* at 1355—56. We did so because the plaintiff "failed to present sufficient evidence to establish that [the decision maker] was aware of her protected conduct." *Id.* at 1356. Exactly the same situation is before us in this case, and the *Clover* decision compels the same result.[6] *See generally Hudson v. Southern Ductile Casting Corp.,* 849 F.2d 1372, 1376 (11th Cir.1988) (affirming grant of summary judgment to the defendant on retaliatory discharge claim where there was uncontradicted evidence that the decision makers were unaware of the plaintiff's threat to file an EEOC charge); *McCollum v. Bolger,* 794 F.2d 602, 610—11 (11th Cir.1986) (affirming judgment for defendant and holding that the plaintiff failed to prove a prima facie case of retaliation where evidence at trial showed that the decision maker did not know that the plaintiff was engaging in protected conduct).

Brungart contends that although Title VII cases often require actual knowledge on the part of the decision maker, under the FMLA, temporal proximity alone is sufficient because it implies knowledge. To

---

[6] *Clover* did involve judgment as a matter of law, while the present case involves summary judgment. However, as the Supreme Court and this Court have explained, "the standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same." *Chapman v. AI Transport,* --- F.3d ----, ---- n.11 (11th Cir.2000) (en banc) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* --- U.S. ----, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000)).

say that temporal proximity "implies" knowledge is simply to say that we should assume such knowledge even though there is no evidence other than temporal proximity to cast any doubt on the decision maker's denial of knowledge. Or more accurately, at the summary judgment stage, "implying" knowledge from temporal proximity despite the unrefuted testimony of the decision maker that he knew nothing of the protected conduct means that we should allow a factfinder to decide, without any basis other than temporal proximity, that the decision maker is lying.[7] But there is no good reason why we should do that in FMLA cases but not in Title VII cases, and we know from our *Clover* decision that we do not do that in Title VII cases.

Brungart also argues that even if the decision maker did not have knowledge of the protected conduct, knowledge should be "imputed" to the corporation where other corporate officials or supervisors had knowledge of it. That position is, of course, foreclosed by our *Clover* decision, because the defendant in that case was a corporation. Even if the *Clover* decision did not exist, we would not be persuaded to adopt Brungart's imputed knowledge theory. The BellSouth corporation itself did not actually make the decision to take the adverse employment action; Nelson made that decision, albeit on the corporation's behalf. Because Nelson did not know of the protected conduct, he could not have taken that action on the corporation's behalf because of the protected conduct. This is another way of saying that the fact the employer is a corporation does not relieve a plaintiff of the burden of showing a causal connection between the protected conduct and the decision to take the adverse employment action.

Because the evidence is unrefuted that Nelson, the decision maker, did not know Brungart had requested and been scheduled for medical leave, Brungart failed to create a genuine issue of fact as to a causal connection between her termination and her scheduled leave or her request for it. Accordingly, she failed to establish a prima facie case of retaliation under the FMLA, and the district court correctly granted summary judgment to BellSouth on this claim.[8]

---

[7]Brungart argues that Nelson's knowledge of her request for medical leave should be inferred because he was her direct supervisor. Whether that factual premise would make any difference is not something we need to decide, because the record reveals without evidentiary dispute that Nelson was not Brungart's direct supervisor, but instead was the supervisor of her supervisor.

[8]In addition to contesting the district court's grant of summary judgment in favor of BellSouth on Counts 1 and 2, which we have fully discussed, Brungart also contends the district court erred in granting summary judgment in favor of BellSouth on Count 3. In that count, Brungart alleged that BellSouth failed to give her "regular notice of her rights and responsibilities under the FMLA" and "written notice either expressly denying or granting her leave under the FMLA prior to her taking leave in December, 1996 for her mother's heart surgery." Having considered her arguments against the factual circumstances of this

## III. CONCLUSION

The district court's judgment is AFFIRMED.

---

case, we affirm the district court's grant of summary judgment on this issue without further discussion.