

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-2008

# Sinacole v. Igate Cap

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1141

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Sinacole v. Igate Cap" (2008). *2008 Decisions.* Paper 714.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/714

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1141
_____

PATRICIA HUNT SINACOLE,

Appellant

v.

IGATE CAPITAL,
also known as
IGATE CAPITAL CORP.
also known as
IGATE CORPORATION

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-00921)
District Judge:  The Honorable David Stewart Cercone

_____

Submitted Under Third Circuit LAR 34.1(a)
May 21, 2008

BEFORE:  SMITH and NYGAARD, Circuit Judges,
and STAFFORD,* District Judge.

---

*· Honorable William H. Stafford, Jr., Senior District Judge for the United States
District Court for the Northern District of Florida, sitting by designation.

_____

OPINION OF THE COURT

_____

NYGAARD, Circuit Judge.

Patricia Sinacole appeals from an order of the District Court granting summary judgment to her former employer iGate Capital on her claims of sexual discrimination, interference with her rights under the Family Medical Leave Act, and breach of contract. We will affirm.

I.

Sinacole and iGate entered into an employment contract in 1998. In 1999, she chose to change her job from a salaried position to work as needed on an hourly, part-time basis for iGate and its subsidiary companies. Her job responsibilities changed from supervision to special projects and policy drafting. She continued to work on this basis for iGate, but also performed work for subsidiary companies of iGate.

On November 28, 2000, Sinacole submitted to iGate the specified paperwork requesting FMLA leave for a pregnancy. She specified that the leave would likely commence on April 4, 2001. iGate did not respond to Sinacole's application.

Sinacole took her leave on April 6, 2001. She did not request, nor did she take leave from any of the subsidiary companies.[1] She resumed part-time work with one subsidiary six days after the birth of her child. Sinacole submitted to iGate her "Notice of Intent to Return from Leave" on May 23, 2001. She specified that she would return to work on July 2, 2001. On June 22, 2001, iGate sent a letter to Sinacole terminating her employment with iGate and its subsidiaries.

In explaining the termination to the District Court iGate noted that it experienced significant financial difficulties that resulted in a reduction in force. Between iGate and its subsidiaries 2,600 of 4,000 employees were terminated from late 2000 until December 2002. Without counting the subsidiaries, iGate, alone, reduced the number of employees from 55 to 36. Two of three employees who performed policy and special project work that was similar to Sinacole were terminated: both were men.

## II.

Sinacole is challenging the District Court's grant of summary judgment in favor of iGate on her claim that iGate interfered with her FMLA rights.[2] Sinacole specifically references the expectation raised in the FMLA that those who are legitimately on leave under

---

[1] iGate notes that it did not request Sinacole to do any work at any time after January 27, 2001.

[2] The standard of review concerning the District Court's grant of summary judgment is plenary. *Bowers v. National Collegiate Athletic Ass'n,* 475 F.3d 524, 535 (3d Cir. 2007).

the FMLA have the right to return to their former position upon concluding leave. 29 U.S.C.A. § 2614(a)(1).

We have characterized the FMLA as setting a floor of employer conduct. Therefore, to assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." *Callison v. City of Philadelphia,* 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a), 2614(a)).[3]

iGate successfully argued before the District Court that Sinacole cannot raise an FMLA interference claim because she worked an insufficient number of hours to be an "eligible employee." She does not dispute the calculation of hours, but argues in equity that the District Court's grant of summary judgment in favor of iGate was reversible error.

Specifically, Sinacole relies upon a regulation promulgated by the Department of Labor that states:

> The determination of whether an employee has worked for the employer for at least 1250 hours in the past 12 months and has been employed by the employer for a total of at least 12 months must be made as of the date leave commences. If an employee notifies the employer of need for FMLA leave before the employee meets these eligibility criteria, the employer must either confirm the employee's eligibility based upon a projection that the employee will be eligible on the date leave would commence or must advise the employee when the eligibility requirement is met. If the employer confirms

---

[3]"Under this theory, the employee need not show that he was treated differently than others[, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision." *Id.* at 119-120. Because the FMLA is not about discrimination, a *McDonnell-Douglas* burden-shifting analysis is not required. *Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006).

eligibility at the time the notice for leave is received, the employed may not subsequently challenge the employee's eligibility. . . . .If the employer fails to advise the employee whether the employee is eligible prior to the date requested leave is to commence, the employee will be deemed eligible. The employer may not, then, deny the leave.

29 C.F.R. §825.110(d). iGate acknowledged that it failed to give such notice to Sinacole.

We agree with other federal courts of appeal that this regulation is invalid to the extent that it expands the scope of employees who are covered by the FMLA by giving otherwise non-eligible employees a cause of action for an employer's failure to respond to an application for FMLA leave. *See e.g. Dormeyer v. Comerica Bank*, 223 F.3d 579, 582 (7th Cir. 2000); *Brungart v. Bellsouth*, 231 F.3d 791 (11th Cir. 2000); *Woodford v. Community Action of Greene County*, 268 F.3d 51 (2d Cir. 2001). It is the sole province of the Congress to establish the scope of employees who have rights under the FMLA.

Sinacole does not dispute this point, but instead relies upon the regulation only to establish an employer duty upon which equitable estoppel can be asserted. In light of this regulation, Sinacole contends that iGate's silence after she applied for FMLA prevents it from proffering evidence of her ineligibility as a defense to her FMLA leave interference claim.

A party claiming equitable estoppel must establish that a misrepresentation of fact was made, upon which the party detrimentally relied. *See In re RFE Industries*, Inc. 283 F.3d 159, 164 (3d Cir. 2002). Assuming, *arguendo,* that iGate's silence can be construed as a misrepresentation upon which she relied, Sinacole nonetheless failed to provide any

5

evidence demonstrating that she suffered a detriment, in the context of an FMLA interference claim, for her reliance upon iGate's silence.

As we stated above, to assert an interference claim an employee must show that she was entitled to benefits under the FMLA and that her employer illegitimately prevented her from obtaining those benefits. "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Philadelphia,* 430 F.3d 117, 120 (3d Cir. 2005). It was Sinacole's burden to proffer facts to establish that she had FMLA rights with which iGate interfered, and she did not do so.

The FMLA does not provide a private right of action for any employee, but rather only for eligible employees. 29 U.S.C. § 2611(1). iGate introduced evidence that Sinacole did not work the 1250 hours that are required to gain entitlement to FMLA benefits. Sinacole did not dispute the truth of this fact. This precluded Sinacole from proffering facts sufficient to establish her interference claim.

Sinacole, obviously aware of the problems with her *prima facie* case, argues that her reliance on iGate's silence eliminated her opportunity to either delay leave until she did become eligible under the FMLA, or take a brief, presumably non-FMLA, leave around the time that the baby was born. There are insurmountable problems with both arguments.

First, regarding the possibility of a delayed leave, it is not reasonable for us to infer that she could have worked more hours before the birth of her child. Sinacole worked at the discretion of iGate; she did not have control over the number of hours for which iGate requested her to work. We do presume that she would have had control over refusing work offered by iGate, but she does not provide any facts for us to reasonably infer that she actually did so in the time period relevant to this claim. The record, therefore, allows us to reasonably infer only that, with proper information about her ineligibility, Sinacole could have delayed family leave to a date well past the birth of her child, when she had worked the required minimum number of hours.[4] Yet, under this scenario, Sinacole would have needed a different qualifying reason to request the later FMLA leave, since the original leave was premised upon the birth of her child. She did not offer any evidence to even imply that such a reason existed.

With regard to the possibility that Sinacole could have taken a shortened leave at the time of the birth of her child, we must presume that she is referring to a non-FMLA leave, since she admits that she was not FMLA-eligible at that time. As such, she would not have had any basis to bring her FMLA interference claim.

Therefore, under every scenario that Sinacole submitted, her interference claim could not have survived summary judgment because she could not produce evidence that

_____

[4.]Sinacole needed over 250 additional hours to qualify for benefits at the time of her April 6, 2001 leave.

7

she was eligibile for any FMLA benefits.  As a result, we cannot find any basis to conclude that Sinacole suffered any detriment resulting from her reliance upon iGate's silence.  For this reason, we conclude that the District Court did not err in refusing to apply equitable estoppel in this case, and did not err in dismissing her FMLA interference claim. [5]

## III.

We easily dispose of the remaining two claims on appeal.  First, with regard to Sinacole's Title VII claim, Sinacole fails to discredit as pretext the explanation offered by iGate for her dismissal.  iGate clearly articulated that it terminated Sinacole because she was a part-time, W-2 hourly employee working remotely from home whose job functions could be eliminated or absorbed by in-house salaried employees.  iGate also produced evidence of a sizeable work-force reduction, necessitated by a financial downturn, that encompassed the time relevant to this claim.  The District Court did not err in ruling that Sinacole failed to produce evidence that iGate's stated reason for the termination was a pretext for discrimination.

With regard to Sinacole's breach of contract claim, we find that the District Court correctly concluded that she voluntarily changed the type and conditions of her employment

---

[5.] We do not make any comment upon the applicability of this equitable estoppel theory to an FMLA discrimination claim.

from salaried to part-time, as needed, which eliminated the applicability of the severance provisions of her contract that she claimed.

## IV.

For the reasons stated above, we will affirm the District Court's grant of summary judgment in favor of iGate Capital.