Carmen CARABALLO, Plaintiff,

v.

PUERTO RICO TELEPHONE,
INC., Defendant.

No. 01–1003 (HL).

United States District Court,
D. Puerto Rico.

Dec. 12, 2001.

Federico Lora–Lopez, San Juan, PR, for Carmen I. Caraballo.

Gregory T. Usera–Macfarlane, Lourdes C. Hernandez–Venegas, Sara E. Colon–Acevedo, Schuster, Usera, Aguilo & Santiago, San Juan, PR, for Puerto Rico Telephone Company, Inc.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is Defendant Puerto Rico Telephone, Inc.'s, ("PRT") motion for summary judgment. Plaintiff, Carmen Caraballo ("Caraballo"), was a supervisor at PRT until she was dismissed in January, 2000. Caraballo alleges that she was fired in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, for taking time off to attend to her daughter's medical needs. Caraballo also invokes the Court's supplemental jurisdiction for her Puerto Rico law claims. 28 U.S.C. § 1367.

The Court draws inferences and evaluates facts in the light most favorable to Caraballo. *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir.1995). At the time of her dismissal, Caraballo worked as a supervisor in PRT's Information Systems Department. As part of her duties, Caraballo supervised an average of eight employees. In 1997, Caraballo became pregnant with her second child. Due to some complications related to her pregnancy, Caraballo was ordered to bed rest on September 22, 1997.[1] She remained on prolonged sick leave until October 14, 1997, when she

1. Dkt. # 19, Exh. 4, pgs. 12–15.

gave birth to her second daughter, Eileen.[2] At that point, she began her maternity leave, which lasted until December 12, 1997.[3]

Shortly after her birth, Eileen was diagnosed with a condition known as microcephalia and with cerebral palsy.[4] These conditions require constant medical attention, and Eileen had to attend up to five different therapies a week.[5] In addition, Eileen also had to attend visits with several different medical specialists.[6] Realizing she would need to miss time from work, Caraballo, on or about January 14, 1998, contacted her immediate supervisor, Pablo Alemañy, and informed him that as appointments became necessary, she would need time to take her daughter to these appointments.[7] On that date, Caraballo missed work to take her daughter to a doctor's appointment in preparation for an operation Eileen was to undergo the following week. In connection to that operation and subsequent complications, Caraballo was absent for the next two weeks until February 2, 1998.[8]

In the next year and a half, Caraballo took several leaves relating to her daughter's condition. When Eileen underwent a second operation, Caraballo was absent from work from March 24, 1998 until April 13, 1998.[9] Then on September 24, 1998, Eileen was again hospitalized, and Caraballo was out until October 13, 1998.[10] On January 15, 1999, Caraballo took part of the day to pre-admit Eileen to the hospital for her third operation.[11] She was scheduled to be out until January 25, 1999.[12] However, due to some post-operation complications, she did not return to work until February 8, 1999, and even then, only on an intermittent basis.[13]

Caraballo also missed several days due to her own medical needs. She was out a week from April 13, 1998 until April 20, 1998 due to illness.[14] Then on April 5, 1999, Caraballo missed five (5) days due to a stomach flu.[15] Later that month, on April 27, she was out again for several days with asthma.[16] Again, on June 30, 1999, Caraballo was absent until August 3, 1999, citing back pains. Finally, Caraballo was out yet again after being ordered to rest at home, from October 27, 1999 until November 8, 1999.[17]

In the period between 1996 and 1999, Caraballo missed a significant number of days aside from those itemized above.[18]

2. Dkt. # 19, Exh. 5, pgs. 66–69.

3. Dkt. # 19, Exh. 5, pgs. 60–69. By December 12, 1997, Caraballo had been on leave for twelve weeks.

4. Dkt. # 19, Exh. 4, pg. 15.

5. Dkt. # 11, Exh. 2, pgs. 47–48.

6. Dkt. # 19, Exh. 4, pgs. 21–22. Eileen had to visit several specialists including pediatricians, neurologists, cardiologists, and hematologists.

7. Dkt. # 19, Exh. 4, pgs. 40–41.

8. Dkt. # 19, Exh. 5, pgs. 56–59.

9. Dkt. # 19, Exh. 5, pgs. 52–53.

10. Dkt. # 19, Exh. 5.

11. Dkt. # 19, Exh. 5.

12. Dkt. # 19, Exh. 28.

13. Dkt. # 19, Exh. 5.

14. Dkt. # 19, Exh. 5.

15. Dkt. # 19, Exh. 5.

16. Dkt. # 19, Exh. 5.

17. Dkt. # 19, Exh. 5.

18. Due to the sheer number of absences, the Court has only outlined a few key periods. For a full record of Caraballo's absences, refer to PRT's payroll and absences record. Dkt. # 19, Exh. 5.

Due to her absenteeism, Caraballo was cited with several disciplinary actions. The first of several written reprimands came as early as January 17, 1996.[19] By that date, Caraballo had missed over a week of work for injuries she sustained after a fall. It is noteworthy that in this particular instance, Caraballo was out until April 10, 1996, at which time her attendance was intermittent at best until her maternity leave began on May 20, 1996.[20] She was out on maternity until July 5, 1996.[21]

On February 20, 1997, Caraballo received a second written warning due to excessive absences.[22] She appealed to both her immediate supervisor, Alemañy, and to Jorge Marrero, the department director, who upheld the reprimand.[23] This citation, however, was later eliminated from Caraballo's record in exchange for her signature on a stipulation with PRT on March 12, 1998, in which she expressed that she would commit herself to improving her attendance record.[24]

A few months later, on May 12, 1998, Alemañy again reprimanded Caraballo for failing to come in at the start of her shift, and for informing a subordinate rather than him, her immediate supervisor, of her absence.[25] Next, on August 5, 1998, Caraballo was summoned to an informal hearing to discuss a possible sanction for her excessive absenteeism.[26] In the summons, Alemañy outlined Caraballo's dismal attendance record for the previous few months.[27] As a result of the hearing, she was suspended for ten days.[28]

On January 27, 1999, Caraballo received a third reprimand when she failed to return to work on the designated day after she took vacation time for her daughter's operation.[29] Caraballo again failed to contact her supervisor to explain her absence. She appealed, and Marrero again sustained the measure.[30] Later in the year, Caraballo received a second suspension of thirty (30) days on August 3, 1999 due to excessive absenteeism.[31]

19.   Dkt. # 19, Exh. 9. This reprimand was not based so much on the excessive absences as it was on the fact that Caraballo failed to contact and explain to her immediate supervisor at the time, Rafael Alonso, the reason for her absence and the status of her condition.

20.   Dkt. # 19, Exh. 5.

21.   Dkt. # 19, Exh. 5.

22.   Dkt. # 19, Exh. 10.

23.   Dkt. # 19, Exh. 11, 12, 13, 14. Caraballo also submitted an appeal to Jose Ponce, the director of labor affairs. Dkt. # 19, Exh. 15.

24.   Dkt. # 19, Exh. 16.

25.   Dkt. # 19, Exh. 19. Due to her unscheduled absence, work was stopped in her division for an hour and a half. Caraballo stated she contacted her subordinate and instructed her to open the office so that work could commence. Dkt. # 19, Exh. 17.

26.   Dkt. # 19, Exh. 20.

27.   In the summons, Alemañy found that between February 20, 1997 and March 12, 1998, Caraballo missed forty-two (42) days due to illness. He also added that Caraballo had been notified in April, 1997 about taking seventeen (17) days in sick leave and unscheduled vacation time. Finally, he indicated that Caraballo had missed thirty-four (34) days between the months of May and July 1998. Dkt. # 19, Exh. 20.

28.   Dkt. # 19, Exh. 27.

29.   Dkt. # 19, Exh. 28.

30.   Dkt. # 19, Exh. 34. Caraballo also made an appeal to Jose Ponce, director of labor affairs, who dismissed her grievance for lack of interest. Dkt. # 19, Exh. 36.

31.   Dkt. # 19, Exh. 37. Between August, 1998 and August, 1999, Caraballo missed 295.75 hours of work due to sick leave and 392.25 hours due to personal matters.

At the conclusion of her suspension, Caraballo was to return to work on September 15, 1999.[32] She did not return as scheduled, and only started back on September 27, 1998.[33] This prompted a second consecutive suspension of fifteen (15) days until October 20, 1999.[34] Caraballo was warned that if the absenteeism persisted, she would be terminated.[35] Despite this warning, once the suspension ended, Caraballo was absent one (1) day for personal reasons and eight (8) days on sick leave.[36] Thus, on November 8, 1999[37], Caraballo was suspended indefinitely from PRT, and ultimately terminated on January 13, 2000.

On January 2, 2001, Caraballo filed this suit against PRT. In her complaint, Caraballo alleges that PRT violated FMLA. However, she fails to specify exactly how PRT did so. In her complaint, Caraballo states that in taking disciplinary action against her, PRT failed to consider her accrual of sick leave and vacation time as well as the remedies provided by FMLA. From this as well as from the facts presented, it appears that Caraballo's claim is that she was terminated in violation of the FMLA because she took leave to which she was entitled under the statute in order to attend to her daughter's medical needs.

## DISCUSSION

### I. Summary Judgment Standard

The standard for summary judgment is straightforward and well-established. The Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining if a material fact is "genuine," the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Leary, 58 F.3d at 751 (1st Cir.1995).

Once a party moves for summary judgment, it bears the initial burden. Specifically, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] ... which it believes demonstrate the absence of a genuine issue of material fact." Crawford–El v. Britton, 523 U.S. 574, 600 n. 22, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed. R.Civ.P. 56(e); Libertad v. Welch, 53 F.3d 428, 435 (1st Cir.1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushi-

**32.** Dkt. # 19, Exh. 37.

**33.** Dkt. # 19, Exh. 5.

**34.** Dkt. # 19, Exh. 38.

**35.** Dkt. # 19, Exh. 38.

**36.** Dkt. # 19, Exh. 39.

**37.** Dkt. # 19, Exh. 39.

ta Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. FMLA:

■ The Family and Medical Leave Act was enacted in an effort to help working men and women balance the often conflicting demands of work and life by recognizing that there are times in a person's life when work must yield to medical needs. *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998). The act's purposes purport to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1) & (2). However, FMLA strives to accomplish these purposes "in a manner that accommodates the legitimate interests of employers" as well. 29 U.S.C. § 2601(b)(3).

Under its statutory scheme, FMLA creates certain substantive rights. Eligible employees are entitled to a total of twelve workweeks of unpaid leave during any twelve month period for any of the following purposes: because of the birth, adoption, or placement in foster care of a child, 29 U.S.C. § 2912(a)(1)(A) & (B); to care for a close family member with a serious health condition, 29 U.S.C. § 2912(a)(1)(C); or when the employee has a serious health condition that makes him or her unable to perform the functions of his or her position, 29 U.S.C. § 2912(a)(1)(D). After a qualified absence, FMLA ensures that the employee be allowed to return to the same position, or an equivalent one, in pay, benefits, and working conditions, without loss of accrued seniority. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.100(c) (1997). The FMLA also allows employees to take intermittent leave when "medically necessary," which includes time to attend appointments with health care providers for necessary treatments. *Hodgens*, 144 F.3d at 159; 29 U.S.C. § 2612(b); 29 C.F.R. § 825.117 (1997).

■ Under FMLA, an employer who provides paid leave for fewer than twelve weeks must provide the additional weeks necessary to attain the twelve prescribed, but may designate those additional weeks as unpaid. 29 U.S.C. § 2612(d)(1). The employer may also require an employee to substitute any accrued paid vacation leave, personal leave, or family leave for any part of the twelve week period. 29 U.S.C. § 2612(d)(2)(A). Under FMLA, twelve weeks is the minimum amount of leave an employer must provide and the maximum the statute requires. *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 937 (8th Cir.2000). As such, when the twelve week period expires, so too does FMLA's job protection. *Daley v. Wellpoint Health Networks, Inc.*, 146 F.Supp.2d 92, 99 (D.Mass.2001).

■ In addition to the above entitlements, FMLA provides protection in the event an employee is discriminated against for exercising his rights under the act. 29 U.S.C. § 2615(a)(1) & (2). Specifically, employers are "prohibited from discriminating against employees ...who have used FMLA leave," nor can they consider the taking of such leave as a negative factor in making employment decisions, such as promotions or disciplinary actions. 29 C.F.R. § 825.220(c). To make a prima facie case of retaliation under these sections, a plaintiff must show that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Hodgens*, 144 F.3d at 161; *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir.1997).

### 1. Eligible Employee

■ Before the Court can proceed with its analysis, there is a threshold question that must be addressed relating directly to the first prong of the prima facie case. In order for an employee to have availed himself of FMLA protection, the employee must have first been eligible to do so. An employee is eligible for FMLA protection if he meets the following two requirements: (1) the employee must be employed by the employer for at least twelve months; and (2) the employee must have worked for at least 1,250 hours during the twelve-month period immediately preceding the commencement of the leave taken. 29 U.S.C. § 2611(2)(A)(i) & (ii). It is undisputed that Caraballo meets the requirement of the first prong. However, defendant avers that Caraballo failed to meet the hour requirement of the second prong, and was therefore not an eligible employee entitled to FMLA protection.

■ The standard for calculating the hours of service requirement for FMLA purposes is the same as the standard established under Section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, et seq. 29 U.S.C. § 2611(2)(C). Under FLSA, "hours worked" does not include time paid, but only time actually spent working. Kosakow v. New Rochelle Radiology Assoc., 88 F.Supp.2d 199, 205 (S.D.N.Y.2000); Robbins v. Bureau of National Affairs, Inc., 896 F.Supp. 18, 20–21 (D.D.C.1995). Specifically, any work hours paid when no work was performed due to vacation, holiday, illness, and other similar causes are not considered "hours of employment" under FLSA. 29 U.S.C. § 207(e)(2). Therefore, to be eligible under FMLA, Caraballo must have accumulated 1,250 hours of actual work in the preceding twelve months prior to the time she commenced her leave.

In this case, Caraballo fails to pinpoint any specific date in either her complaint or opposition to defendant's motion for summary judgment on which her FMLA leave would have commenced. This, as the defendant points out, is fatal to Caraballo's case as this date is crucial to calculating the 1,250 hour requirement. Caraballo does state that in January, 1998, she informed her supervisor that as appointments arose, she would need time to take care of her daughter's medical needs. PRT has pinpointed this date to be more or less on January 14, 1998. After reviewing Caraballo's rather lengthy absence records, the Court has also identified several leaves taken by Caraballo after that date that may be considered qualifying periods under FMLA.[38]

Although the Court is not in the habit of doing counsel's work, for the purpose of this action, the Court will assume that January 14, 1998 is the triggering date for measuring FMLA eligibility. Jackson v. United States, 156 F.3d 230, 234 (1st Cir. 1998) (stating that "trial judges are not mind readers, and they should not be expected to do counsel's home work"). It is important to note that the calculation of

---

**38.** The dates identified are as follows: March 24, 1998, by which point, Caraballo had worked only 918.6 hours in the preceding twelve months; September 24, 1998, by which point, Caraballo had worked only 573.4 hours in the preceding twelve months; January 15, 1999, by which point, Caraballo had worked only 854.8 hours in the preceding twelve months; April 5, 1999, by which point, Caraballo had worked only 856.5 hours in the preceding twelve months; April 27, 1999, by which point, Caraballo had worked only 934 hours in the preceding twelve months; June 30, 1999, by which point, Caraballo had worked only 895.7 hours in the preceding twelve months; and October 26, 1999, by which point, Caraballo had worked only 784.4 hours in the preceding twelve months. See Dkt. # 11, Exh. 5g–5m.

hours worked should be done from the date that leave commences and not from the time leave is requested. While January 14, 1998 is the time Caraballo requested leave, she was also absent on that date in preparation for her daughter's upcoming operation. For that reason, the Court considers this date as the measuring point. However, on that date, Caraballo was not eligible for FMLA leave as she had only worked 1009.3 hours in the preceding twelve months. Moreover, Caraballo was not eligible for FMLA leave on any of the dates identified by the Court.[39] On September 22, 1997, one of the two times she was eligible, Caraballo enjoyed her entire twelve week allotment under sick and maternity leave.[40]

Caraballo does not at any point contest the accuracy of PRT's absence records. Rather, in response to defendant's eligibility argument, Caraballo argues that she should be deemed eligible pursuant to a Department of Labor regulation that waives statutory eligibility in cases in which the employer fails to inform the employee of his FMLA eligibility status. 29 C.F.R. § 825.110(d). Specifically, the regulation provides that "if the employer fails to advise the employee whether the employee is eligible [for leave] prior to the date the requested leave is to commence, the employee will be deemed eligible." 29 C.F.R. § 825.110(d). Caraballo avers that PRT never advised her as to whether she was eligible when she requested leave, and as such, the eligibility requirement should be waived.

Although the First Circuit has yet to address this issue, several courts have found this regulation to be invalid. *Dormeyer v. Comerica Bank–Illinois*, 223 F.3d 579, 583 (7th Cir.2000); *Brungart v.*

*BellSouth Telecommunications, Inc.*, 231 F.3d 791, 796 (11th Cir.2000); *McQuain v. Ebner Furnaces, Inc.*, 55 F.Supp.2d 763, 773–776 (N.D.Ohio 1999). As the Seventh Circuit explains in *Dormeyer*, the Department of Labor ("DOL") has been granted the authority to issue regulations that carry out Congress' intent with respect to FMLA. 223 F.3d at 582. The DOL, however, does not have the authority to change the Act, and that is exactly what it attempts to do with this regulation. The regulation belies the clear text of the statute by allowing ineligible employees to reap benefits to which they are not entitled simply because they were not notified of their eligibility status. As *Dormeyer* points out, under this regulation, an employee who has worked only eight hours could benefit from FMLA leave if his employer neglected to advise him of his eligibility. *Id.* Congress clearly did not intend to confer upon ineligible employees such a windfall as a matter of law or equity, nor did Congress intend to extinguish the employer's defense without any basis in legal principle. *Id.* at 582–83. The statute is perfectly clear on an employee's eligibility requirements. The right to family leave is conferred upon those employees who have completed the requisite 1,250 hours of actual work in the previous twelve months. Those not meeting this requirement are simply not protected. As this is an issue that Congress addresses clearly and does not leave open to interpretation, the principle of *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), is not at issue. *Dormeyer*, 223 F.3d at 582. Therefore, this regulation "is not only unauthorized; it is unreasonable." *Id.* at 583.

**39.** *See* Fn. 38, *supra.*

**40.** In the year preceding September 22, 1997, Caraballo had worked 1,475.6 hours. Dkt. # 11, Exh. 5f.

■ Without the DOL regulation, Caraballo is left with no legal leg on which to stand. Yet, even assuming, *arguendo*, that she had been eligible under FMLA, Caraballo can claim no injury in need of remedy inasmuch as she enjoyed several leaves beyond the twelve weeks proscribed by FMLA. *Dodgens v. Kent*, 955 F.Supp. 560, 565(D.S.C.1997) (stating that the court would be elevating form over substance by allowing a claim to proceed where the employer failed to comply with all of FMLA's dictates but the employee nevertheless received all the leave and benefits under FMLA). From her record, it is clear that in regards to the period beginning on January 14, 1998, Caraballo was absent intermittently from work, extinguishing the twelve weeks guaranteed by FMLA on July 17, 1998.[41] However, the Court finds that aside from being ineligible on January 14, 1998, Caraballo was also not entitled to any FMLA protection because she had just come off a twelve week leave that commenced on September 22, 1997 and ended on December 12, 1997. The FMLA protects employees for twelve weeks in any twelve month period. That protection expired on December 12, 1997, and Caraballo would not have been eligible for leave again until September 21, 1998, assuming she had worked the requisite number of hours. Nevertheless, Caraballo essentially enjoyed a bonus twelve week leave without any interference from PRT.

As if PRT had not been generous enough, Caraballo enjoyed several additional twelve week leaves from 1998 until her termination in 2000, for which she did not meet the eligibility requirements.[42] In response to this claim, Caraballo states that much of this time was charged to sick leave, vacation leave, or leave without pay and not FMLA leave. This argument, however, indicates that Caraballo misunderstands both the intent and the clear text of the statute. The FMLA provides eligible employees *reasonable* leave to attend to medical needs. In doing so, FMLA allows employers to substitute any accrued leave for FMLA leave so long as an employee receives the benefit of twelve weeks of leave. 29 U.S.C. § 2612(d)(2)(A). Caraballo unquestionably exhausted her entire twelve week entitlement several times over.

■ Here, the Court does not doubt the severity of Caraballo's daughter's condition, nor is the Court insensitive to Caraballo's need to attend to her daughter's many medical needs. However, the Court is also mindful of PRT's interest in maintaining one of its supervisors working. Employers are well within their rights to establish legitimate performance goals for their employees. To that end, an employer has a significant interest in insuring that each employee's work continues at a steady pace. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1115 (7th Cir.1992) (stating that "reliability and promptness are important considerations in maintaining a work force"). Obviously, an employee that is frequently absent cannot perform the essential functions of her job. *Nowak v. St. Rita H.S.*, 142 F.3d 999, 1003 (7th Cir. 1998). Caraballo, undoubtedly, did not meet PRT's performance expectations, but rather reaped a major windfall in having the luxury of keeping her position while at the same time benefitting from a far greater amount of leave than she was entitled to under the Act. From the record, and by

---

41. Dkt.# 19, Exh. 5.

42. Caraballo enjoyed the following additional periods of leave: From March 24, 1998 to October 30, 1998, Caraballo enjoyed twelve weeks of intermittent leave. Similarly, Caraballo enjoyed twelve more weeks of leave intermittently from September 24, 1998 until June 11, 1999. Dkt. # 19, Exh. 5.

Caraballo's own admission,[43] it is clear that PRT never denied her any leave requested to take care of not only her daughter's needs, but her own as well. Moreover, the disciplinary actions taken against her were not so much for the excessive absences, although they certainly were a source of concern, as much as they were for Caraballo's failure to follow the chain of command in failing to inform her superiors when she had an unscheduled absence. As such, these actions certainly were not unreasonable and were quite justified.

Finally, the evidence clearly shows that PRT gave Caraballo countless opportunities to improve her chronic absenteeism, but alas, it was incurable. Rather than taking advantage of PRT's willingness to accommodate her needs, Caraballo took advantage of PRT's flexibility and continued with her pattern of absences and tardiness. In light of these reasons, PRT was well within its rights when it finally terminated Caraballo.

#### 2. Retaliation Claim.

Caraballo's primary argument is that PRT discriminated against her for availing herself to leave granted under the protection of FMLA. However, as discussed above, Caraballo failed to meet the requirements necessary to be classified as an eligible employee under FMLA, and as such her absences beginning on January 14, 1998 were not protected. Therefore, because Caraballo was not eligible for FMLA leave, she could not have availed herself of a protected right under the statute, and PRT did not violate the act in terminating an ineligible employee.

WHEREFORE, the Court finds that Caraballo was not an eligible employee under FMLA, and was therefore not enti-

tled to protection. As such, the Court hereby GRANTS defendants' motion for summary judgment as to all claims against Defendant Puerto Rico Telephone, Inc. (Dkt.# 11).

■ Lastly, Caraballo has also brought a claim under Puerto Rico's Unjust Dismissal Act, 29 L.P.R.A. § 185. The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. *United Mine Workers of Amer. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, if federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id.; Figueroa Ruiz v. Alegria,* 896 F.2d 645, 650 (1st Cir.1990); *Soto v. Carrasquillo,* 878 F.Supp. 324, 332 (D.P.R.1995), *aff'd sub nom. Soto v. Flores,* 103 F.3d 1056 (1st Cir.1997). Because the Court has dismissed Caraballo's federal law claims under FMLA, the Court hereby dismisses without prejudice her Puerto Rico law claim. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

**43.** In her deposition, Caraballo conceded that whenever she had to take her daughter to an appointment, PRT granted her leave to go.

Dkt. # 11, Exh. 2, pgs. 42–45; Dkt. # 19, Exh. 8, pgs. 13–14.