PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 20 2000
THOMAS K. KAHN
CLERK

_____

No. 99-4144
Non-Argument Calendar

_____

D. C. Docket No. 97-07431-CV-WDF

CARINE ARMINDO,

Plaintiff-Appellant,

versus

PADLOCKER, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 20, 2000)**

Before COX and WILSON, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

Plaintiff Carine Armindo appeals the district court's grant of summary

judgment to defendant Padlocker, Inc., on Armindo's claim of pregnancy

discrimination. The district court held that Armindo failed to establish that Padlocker's asserted reason for her termination–her poor attendance record–was a pretext for unlawful pregnancy discrimination. We affirm, holding, among other things, that the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), is not violated by an employer who fires an employee for excessive absences, even if those absences were the result of the pregnancy, unless the employer overlooks the comparable absences of non-pregnant employees.

At the outset, we note that only a claim under the Pregnancy Discrimination Act is at issue. The suit was not brought under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654, nor could it have been, because Armindo had been employed by Padlocker as a permanent employee for only three months and was therefore not an "eligible employee." *See* 29 U.S.C. § 2611(2).

The PDA provides that the prohibition against sex-based employment discrimination in § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), applies with equal force to discrimination on the basis of "pregnancy, childbirth, or related medical conditions." *See* 42 U.S.C. § 2000e(k). Further, the PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). The analysis

required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312-13 (11th Cir. 1994).

Armindo argues that she was discriminated against on account of her pregnancy when she was terminated in July 1996 from her job as an entry level clerical employee after three months of probationary employment. Padlocker contends, however, that Armindo was terminated because of her poor attendance record. It is undisputed that Armindo missed at least six days of work during her three months of employment, five of which were due to pregnancy-related illnesses and one because of car trouble. On nine other occasions Armindo either arrived late or left work early. At least some of these occasions of missed work were pregnancy-related.

The district court assumed without deciding that Armindo had established a prima facie case of pregnancy discrimination, but held that Armindo failed to establish that Padlocker's explanation that she was fired because of her poor attendance was a pretext for pregnancy discrimination. We review the district court's grant of summary judgment *de novo*. *See Armstrong*, 33 F.3d at 1309.

The district court properly held Armindo failed to demonstrate that she was fired for any reason other than her poor attendance. Armindo did not attempt to show that she was treated differently from similarly situated non-pregnant employees who

3

missed a comparable amount of work. A plaintiff alleging pregnancy discrimination need not identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her. *See Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383 (11th Cir. 1994) (inference of pregnancy discrimination arose where employer fired pregnant employee for excessive absences despite employee having missed no more than her sick time allotted under company policy). There was no evidence, however, that Padlocker violated company policy in terminating Armindo. In fact, Padlocker's employee manual provided that employees only received sick days after successfully completing their initial three-month probationary term of employment, which Armindo had not completed at the time of her absences. The only inference to be drawn is that Padlocker fired Armindo for missing work, not for being pregnant.

The question becomes whether, as a matter of law, Padlocker violated the Pregnancy Discrimination Act to the extent that its decision to fire Armindo was based upon absences and other missed work that were the *result* of her pregnancy. The issue, generally stated, is whether the PDA requires an employer to treat favorably a pregnant employee whose pregnancy caused her to miss work, as compared to a non-pregnant employee who missed work on account of a different medical condition.

The clear answer is that the PDA does not require favorable treatment in this respect. In *Armstrong v. Flowers Hosp.*, 33 F.3d 1308 (11th Cir. 1994), a pregnant nurse who had been fired by her employer for refusing to treat an HIV-positive patient brought suit under the PDA. A panel of this circuit rejected plaintiff's argument that the employer was required by the PDA to provide her with "alternative work" that she claimed would be safer for her fetus. The panel reasoned that, although the language of the statute does not address whether employers are required to give favorable treatment to pregnant employees, statements in the legislative history "make it clear that the PDA does not require employers to extend any benefit to pregnant women that they do not already provide to other disabled employees." *See Armstrong*, 33 F.3d at 1316-17. In support of its holding, the panel cited the Seventh Circuit case of *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737-39 (7th Cir. 1994), drawing from it the principle that "[w]hile the PDA requires the employer to ignore the pregnancy, the employer need not ignore absences, unless the employer likewise ignores the absences of nonpregnant employees." *See Armstrong,* 33 F.3d at 1317.

The *Armstrong* panel's holding--that employers may comply with the PDA without giving preferential treatment to pregnant employees in the form of alternative work assignments–dictates the outcome of this case. The PDA is not violated by an

employer who fires a pregnant employee for excessive absences, unless the employer overlooks the comparable absences of non-pregnant employees.

The district court properly held that Armindo did not show that Padlocker's asserted reason for her termination–her poor attendance–was a pretext for discrimination "because of" her pregnancy. Nor did Padlocker violate the PDA to the extent that it judged her on the basis of absences that were caused by her pregnancy.

AFFIRMED.