[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 1, 2009
THOMAS K. KAHN
CLERK

No. 09-11755
Non-Argument Calendar

_____

D. C. Docket No. 07-01456-CV-TWT-1

CRYSTAL HYDE,

Plaintiff-Appellant,

versus

K. B. HOME, INC.,

Defendant,

DANIEL J. WAIBEL,
KB HOME,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 1, 2009)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Crystal Hyde appeals the grant of summary judgment on her claims of gender and pregnancy discrimination, harassment, and retaliation under Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a) ("Title VII"), and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA"); for retaliation under the Family Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"); for commission of the tort of negligent retention under state law; and for punitive damages and attorneys' fees, brought against her former employer, KB Home, and her former supervisor, Daniel Waibel. First, she argues that the district court erred in granting summary judgment on her Title VII sex discrimination disparate treatment claim because she presented direct evidence of discrimination and established a *prima facie* case with circumstantial evidence of discrimination. Second, she argues that the district court erred in granting summary judgment on her Title VII sexual harassment claim because she suffered a tangible employment action—withdrawal of work assignments—and the hostile work environment interfered with her job performance. Third, she contends that the district court erred in finding that she did not present direct evidence of retaliation for taking protected FMLA leave or that she did not establish a *prima facie* case of retaliatory discharge. Fourth, she

2

argues that the district court erred in granting summary judgment on her state law claim of negligent retention of Waibel. Finally, she argues that the district court erred in granting summary judgment on her claims for punitive damages and attorney's fees.

Upon review of the parties' briefs and the record, we affirm the district court's grant of summary judgment for KB Home for all claims on appeal.

## I. STANDARD OF REVIEW

We review a grant of summary judgment *de novo* and view the evidence in the light most favorable to the nonmoving party. *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1161–62 (11th Cir. 2006) (citing *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000)). Summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## II. DISCUSSION

### A. Title VII Sex Discrimination Disparate Treatment

An employer may not "discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex,"

and, following enactment of the PDA, this includes discrimination on the basis of "pregnancy, childbirth, or related medical conditions." 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k); *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000) (per curiam). In other words, an employer is not permitted to take an "adverse employment action" against an employee on the basis of his or her sex or pregnancy, as to do so would constitute illegal discrimination. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1235 (11th Cir. 2001) (adverse employment action is required to obtain relief under Title VII's anti-discrimination clause). Thus, an "adverse employment action" is a crucial component in any discrimination claim under Title VII because without it, Title VII offers no remedy. *See id.* Whether an employment action is adverse is a matter of federal law, not state law. *Hinson v. Clinch County, Ga. Bd. Of Educ.*, 231 F.3d 821, 828–29 (11th Cir. 2000). It is also a question of fact, although one still subject to the traditional rules governing summary judgment. *See id.* at 830 (noting that a reasonable factfinder could have concluded that the plaintiff suffered an adverse employment action, thus indicating that whether an employment action is adverse is a question of fact); Fed. R. Civ. P. 56(c).

A plaintiff "must show a *serious and material* change in the terms, conditions, or privileges of employment" to establish an adverse employment

4

action. *Davis*, 245 F.3d at 1239 (emphasis in original). The actions must also be viewed under the totality of circumstances. *See Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1301 (11th Cir. 2005) (citing *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)) ("In deciding whether employment actions are adverse, we consider the employer's acts both individually and collectively."); *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001) ("While the other actions might not have individually risen to the level of adverse employment action under Title VII, when those actions are considered collectively, the total weight of them does constitute an adverse employment action."). It is important to note, however, that not all conduct by an employer that negatively affects an employee constitutes adverse employment action in a discrimination context. *Davis*, 245 F.3d at 1238. Additionally, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* at 1239. Under the Supreme Court's precedent in *Burlington Northern & Santa Fe Railway Company v. White*, a plaintiff must show that the employer's challenged action "would have been materially adverse to a reasonable employee," that it would have "likely . . . dissuad[ed] a reasonable worker from making or supporting a charge of

5

discrimination," and that the plaintiff was harmed by this. 548 U.S. 53, 57, 126 S. Ct. 2405, 2409 (2006).

Under FMLA regulations, temporary reassignment to accommodate leave is permissible. 29 C.F.R. § 825.204(a). A reduction in hours may be accompanied by a reduction in overall pay, however, so long as the hourly rate remains constant. 29 C.F.R. § 825.204(c). An employer may also alter duties or responsibilities in connection with an employee's needs under the FMLA. 29 C.F.R. § 825.204.

With respect to Title VII, in *Davis*, we noted that temporary changes in work assignments that were essentially demotions but did *not* change the employee's pay status did not meet the definition of adverse employment action. 245 F.3d at 1240. While we declined to hold that a change in work assignments can never by itself give rise to a Title VII claim, we observed that in the majority of instances, "a change in work assignments, without any tangible harm" is outside the protection of Title VII's anti-discrimination clause, "especially where . . . the work assignment at issue is only by definition temporary and does not affect the employee's permanent job title or classification." *Id.* at 1245. A transfer to a different position can also be "adverse" if it involves a reduction in "pay, prestige, or responsibility." *Hinson*, 231 F.3d at 829 (internal quotation marks omitted).

Hyde argues that the reduction of her pay rate, disallowance of vacation time

6

during leave, and withdrawal of substantially all of her work assignments constituted a *serious and material* change in employment involving a loss of prestige and responsibility. KB Home responds that it provided Hyde with every benefit to which she was entitled under the FMLA and that Hyde's unsubstantiated claim that her pay was reduced at some point is specious. Additionally, KB Home argues that there is no record evidence showing that Hyde was denied vacation time, and Hyde admits that she was given as much time off as needed under the FMLA. KB Home also responds that temporary reduction and reassignment of job duties in preparation for an employee's maternity leave does not rise to the level of a serious and material change of the terms of employment, and therefore, cannot constitute adverse employment action.

Hyde additionally argues that the withdrawal of substantially all of her job responsibilities a month and a half before she took any intermittent leave were not actions taken by her employer to accommodate her FMLA leave requests. KB Home argues that it had to have a plan in place to continue its operations and ensure that work was getting done in a timely fashion when Hyde was out of the office taking intermittent and continuous FMLA leave. Thus, KB Home responds that it simply took reasonable steps to ensure that this would occur. It additionally argues that a temporary reassignment of job duties is proper under the FMLA, and

such temporary reassignment cannot, at the same time, somehow be deemed to constitute an adverse employment action for Title VII purposes.

Hyde failed to present evidence of an adverse employment action, and therefore, she has not presented a cognizable claim for Title VII sex discrimination disparate treatment. First, Hyde relies on *Hinson* for the proposition that an action may be considered an adverse employment action under Title VII "if it involves a reduction in pay, prestige, *or* responsibility." 231 F.3d at 829 (emphasis added). In *Hinson*, a female plaintiff's transfer from high school principal to an administrative position, and eventually a full-time teacher constituted adverse employment action because the administrative position entailed a significant loss of pay, and there was an issue of fact that the new position was less prestigious. *Id.* Hyde's case is distinguishable because Hyde's job title did not change, she did not receive a reduction in pay for taking FMLA leave, and although her responsibilities were reduced and reassigned, it was the result of KB Home preparing for Hyde's intermittent and continuous medical leave. Additionally, "[a]ny adversity must be material; it is not enough that a transfer imposes some *de minimis* inconvenience or alteration of responsibilities." *Doe v. Dekalb County Sch. Bd.*, 145 F.3d 1441, 1453 (11th Cir. 1998) (emphasis in original). Here, Hyde was not transferred or demoted, but her job title and salary remained the same, and her reduction in

8

responsibilities alone, therefore, did not amount to an adverse employment action.

KB Home's reassignment of Hyde's job responsibilities to Tammy Catchings and

Cheryl Nelson were also proper in order to prepare for Hyde's intermittent and

continuous FMLA leave. There is evidence that some of Hyde's duties were daily

ones, and some days were more intensive than others. This support's KB Home's

reasoning that it withdrew Hyde's duties because it needed to adequately prepare

those who would be replacing Hyde while she was out on leave.

Therefore, we affirm the decision of the district court granting summary

judgment in favor of KB Home on Hyde's Title VII sex discrimination disparate

treatment claim because Hyde did not suffer an adverse employment action.

## B. Title VII Sexual Harassment

Under Title VII, 42 U.S.C. § 2000e-2(a)(1), sex-based harassment of an

employee is forbidden. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244–45

(11th Cir.1999) (*en banc*) (stating that although Title VII does not mention

harassment, the Supreme Court includes harassment as actionable under Title VII).

To prove sexual harassment, a plaintiff may rely on either a "tangible employment

action" theory or a "hostile work environment" theory.[1] *Hulsey v. Pride*

---

[1]Hyde appears to have raised both "tangible employment action" and "hostile work environment" theories of sexual harassment in Count I of her complaint. Doc. 1 at 19–21 ("Count I: Violation of Title VII Gender-Based Discrimination with Tangible Employment Action" and alleging that the "gender-based discrimination by Defendant Waibel and the failure of KB Home to take adequate remedial measures to remedy discrimination . . . unreasonably interfered with

*Restaurants, LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004). "[A] tangible employment action is a significant hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (internal quotation marks omitted) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998)). The test for an adverse employment action in a disparate treatment context is similar to the one for a "tangible employment action" in a harassment analysis. *Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) (equating "tangible employment action" with "adverse employment action"). Additionally, in order to establish employer liability, a plaintiff must also establish a "causal link between the tangible employment action and the sexual harassment." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006). Because Hyde failed to establish an "adverse employment action" under her Title VII disparate treatment discrimination claim, she likewise has not established a

---

Plaintiff's work performance and created and intimidating, hostile and offensive working environment"). The Magistrate Judge's report and recommendation, however, only addressed Hyde's harassment claim under the tangible employment action theory and denied summary judgment on Hyde's harassment claim because there was a genuine issue of material fact as to whether a reduction in responsibilities constituted a "tangible employment action." Doc. 99 at 43–46. Although the district court granted summary judgment on the harassment claim without explanation, it appears that when the district court found that Hyde's Title VII disparate treatment discrimination claim could not survive, it concurrently found that Hyde's Title VII harassment claim also could not survive. Doc. 110 at 4. Because it is unclear which theory of harassment Hyde makes her claim under, we address both theories upon review of the district court's grant of summary judgment for KB Home.

"tangible employment action" for her Title VII harassment claim. Therefore, Hyde's harassment claim under the "tangible employment action" theory cannot survive KB Home's motion for summary judgment.

A Title VII harassment claim under the "hostile work environment" theory is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (internal quotations and citations omitted) (holding that Title VII is not implicated in the case where there is a mere utterance of an epithet); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). To prove sexual harassment under a hostile work environment theory, a plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;" and (5) there is a basis for employer liability. *Mendoza*, 195 F.3d at 1245.

As the fourth element, severe and pervasive, contains both an objective and a subjective element, this behavior must result in both an environment "that a

11

reasonable person would find hostile or abusive," and an environment that the victim "subjectively perceive[s] . . . to be abusive." *Harris*, 510 U.S. at 21, 114 S. Ct. at 370; *Miller*, 277 F.3d at 1276. In evaluating the objective severity of the harassment, this Court looks at the totality of the circumstances and considers, *inter alia*, "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*, 277 F.3d at 1276 (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)).

The conduct and comments that Hyde provides for her harassment claim based on a "hostile work environment" theory do not rise to the level of conduct that is "severe or pervasive to alter the conditions of [her] employment." *Harris*, 510 U.S. at 21, 114 S. Ct. at 370. Although several stray comments by Waibel were directed towards Hyde, arguably indicating that her reduction in responsibilities was due to her pregnancy, these comments to not rise to the level of being "severe or pervasive," and they did not occur until after Hyde returned to work after taking FMLA leave. Hyde additionally argues that Waibel's conduct in the office before she went on FMLA leave, specifically ignoring Hyde or slamming papers on Hyde's desk, constituted severe or pervasive conduct that

12

altered her working conditions. However, Hyde does not provide any evidence that such conduct occurred as a result of her pregnancy or taking FMLA leave, and such conduct was not severe or pervasive to create a hostile work environment. Finally, Hyde does not offer any evidence that would indicate that Waibel's comments or conduct unreasonably interfered with her job performance. Therefore, Hyde's Title VII harassment claim based on a "hostile work environment" theory cannot survive KB Home's motion for summary judgment.

Based on the record and the parties' briefs, we affirm the district court's grant of summary judgment for KB Home on Hyde's Title VII sexual harassment claim because there is no genuine issue of material fact as to Hyde's claim based on either a "tangible employment action" theory or a "hostile work environment" theory.

### C. FMLA Retaliation and Title VII and FMLA Retaliatory Discharge

Pursuant to the FMLA, 29 U.S.C. § 2615(a)(2), it is unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Similarly, Title VII, 42 U.S.C. § 2000e-3(a), makes it unlawful for an employer to discriminate against an employee because he or she "has opposed any practice made an unlawful employment practice by this subchapter . . . ." This includes internal complaints of

13

discrimination. *See Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). Such discrimination may be proven through direct or circumstantial evidence. *See Berman v. Orkin Exterminating Co. Inc.*, 160 F.3d 697, 701 (11th Cir. 1998). Statements made by a non-decision maker are not probative of discriminatory intent as direct evidence. *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

To establish a *prima face* case of retaliation using circumstantial evidence, a plaintiff may show that "(1) [she] engaged in a statutorily protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse action." *Berman*, 160 at 701; *see also Martin v. Brevard County Pub. Schs.*, 543 F.3d 1261, 1268 (11th Cir. 2008) (per curiam) (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000) (setting out elements for *prima facie* case of FMLA retaliation). If the plaintiff makes out a *prima facie* case, the burden shifts to the employer to offer a legitimate non-discriminatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). If one is offered, the presumption of discrimination is rebutted, and the plaintiff must offer evidence that the reason is pretext for illegal discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (citing *Tex.*

14

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56, 101 S. Ct. 1089, 1094–95 (1981)).

Under a "cat's paw" or mixed-motive theory of liability, "a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct." *Crawford v. Carroll*, 529 F.3d 961, 979 n.21 (11th Cir. 2008). "Where a decision maker conducts his own evaluation and makes an independent decision, his decision is free of the taint of a biased subordinate employee." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1270 (11th Cir. 2001). In a mixed-motive case, the plaintiff must prove that her gender played a motivating part in an employment decision, and the defendant must show that it would have made the same decision regardless of the plaintiff's status in order to avoid liability. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S. Ct. 1775, 1795 (1989) (plurality opinion). Where a defendant does so, the burden shifts back to the plaintiff to demonstrate that termination was motivated by the improper consideration. *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007).

Hyde argues that both withdrawal of her work assignments and her termination were the result of retaliation. She argues that she presented direct

evidence of the pre-termination retaliation through statements by Waibel stating that he took her work away "because she got F-ing pregnant" and "was tired of her milking the system." She contends that her termination was the result of retaliation and can be established via circumstantial evidence. As to Hyde's pre-termination FMLA retaliation claim, although there is direct evidence that Waibel withdrew Hyde's work and reassigned her duties because Hyde chose to take FMLA leave, the reduction and reassignment of duties did not constitute adverse employment actions, but were a means of accomodating Hyde's FMLA leave. Therefore, Hyde's FMLA pre-termination retaliation claim cannot survive KB Home's motion for summary judgment.

Additionally, the district court did not err in granting summary judgment on Hyde's Title VII and FMLA retaliatory discharge claims. There is no evidence that Waibel was a decision maker in terminating Hyde. Therefore, even if Waibel wished to terminate Hyde for using FMLA leave, his lack of involvement in Hyde's termination means that such evidence cannot establish a retaliatory discharge claim. Further, Hyde cannot establish a "cat's paw" theory of retaliatory discharge because she has not presented evidence that any of the actual decision makers had any substantial input from Waibel in making their decision. Finally, she did not show that this was a mixed motive case because the only evidence of a

16

discriminatory motive rests with Waibel, and he did not participate in the decision to terminate her through the reduction in force ("RIF"). There is no evidence that her gender or status as a pregnant woman played any role in her dismissal through RIF. Accordingly, the decision of the district court granting summary judgment to KB Home and Waibel regarding her FMLA retaliation claim for withdrawal of work assignments is affirmed, and the grant of summary judgment on her claims for Title VII and FMLA retaliatory discharge are affirmed.

### D. Georgia State Law Claim for Negligent Retention

"In a cause of action for negligent retention, an employer may be held liable only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." *MARTA v. Mosley*, 634 S.E.2d 466, 469 (Ga. Ct. App. 2006) (citation and quotation marks omitted).

The district court correctly concluded that Hyde presented no evidence that KB Home knew or should have known of any tendency of Waibel to discriminate against pregnant women. Her first complaint about Waibel to KB Home did not occur until after she returned from leave in August, at which point she met with HR to discuss the problem and was promptly reassigned to work under another

17

supervisor in a different department. Complaints by another employee about earlier animosity towards Hyde were similarly dealt with when Hyde returned from leave. Additionally, because KB Home was not on notice about a hostile work environment before Hyde went on leave, they cannot be held liable for negligent retention. Further, Waibel was terminated shortly after Hyde complained, albeit for unrelated reasons. Accordingly, the decision of the district court granting summary judgment to KB Home on Hyde's negligent retention claim is affirmed.

## E. Punitive Damages and Attorneys' Fees

We review an award in a Title VII case for abuse of discretion and underlying legal claims *de novo*. *See EEOC v. W & O, Inc.*, 213 F.3d 600, 610 (11th Cir. 2000) (citation omitted). A plaintiff may recover punitive damages under Title VII if the defendant "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Pursuant to 42 U.S.C. § 2000e-5(k), a court in its discretion may allow the prevailing party reasonable attorneys' fees.

Because the district court's grant of summary judgment to KB Home is affirmed as to Hyde's Title VII claims, Hyde cannot recover punitive damages under 42 U.S.C. § 1981a(b)(1). Accordingly, the grant of summary judgment

18

regarding punitive damages is affirmed.  Because the district court's grant of summary judgment on all claims is affirmed, and Hyde is not a prevailing party; the decision to grant summary judgment regarding attorneys' fees is also affirmed.

### III. CONCLUSION

Upon review of the record and the parties' briefs, we affirm the district court's grant of summary judgment to KB Home and Waibel on Hyde's Title VII discrimination, harassment, and retaliation claims; FMLA retaliation claim; Georgia state law negligent retention claim; and punitive damages and attorneys' fees claims.

**AFFIRMED.**