[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14939
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 23, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:09-cv-00208-SCB-EAJ


MINDY SLATER,

                                                          Plaintiff-Appellant,

versus

ENERGY SERVICES GROUP INTERNATIONAL INCORPORATED,
a.k.a. ESG International, Inc.,

                                                          Defendant,

PROGRESS ENERGY SERVICE COMPANY, LLC,
A subsidiary of Progress Energy, Inc., et al.,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 23, 2011)

Before TJOFLAT, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Mindy Slater appeals from the district court's grant of summary judgment in favor of Progress Energy Service Company, LLC, a subsidiary of Progress Energy, Inc., and Florida Power Corporation d/b/a Progress Energy, Inc., (collectively "Progress Energy") in her discrimination suit alleging pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e(k) and 2000e-2(a), and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.10, and retaliation under the Florida Whistleblower Act ("FWA"), Fla. Stat. § 448.102. On appeal Slater argues that: (1) she established a prima facie case of pregnancy discrimination; (2) Progress Energy's reason for her termination was pretext for pregnancy discrimination; (3) she established that her termination was retaliatory; (4) the district court abused its discretion when it allowed the use of a crane operator applicant's ("COA") confidential medical records in Progress Energy's summary judgment motion but denied Slater the opportunity to depose the COA; and (5) the district court abused its discretion by denying Slater further discovery. After careful review, we affirm.

"[W]e review the granting of summary judgment de novo, and the district court's findings of fact for clear error." Robinson v. Tyson Foods, Inc., 595 F.3d

2

1269, 1273 (11th Cir. 2010). If the movant satisfies the burden of production showing no genuine issue of fact, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008) (quotation omitted). "We draw all factual inferences in a light most favorable to the non-moving party." Id. Nevertheless, the non-moving party cannot create a genuine issue of material fact through speculation. Id. "In reviewing a district court's discovery order, [we] must consider whether the judge abused his discretion." Langston v. ACT, 890 F.2d 380, 388 (11th Cir. 1989). Under this standard, "a party must be able to show substantial harm to its case from the denial of its requests for additional discovery." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1219 (11th Cir. 2000). We also "review a denial of discovery under Rule 56(f) for abuse of discretion." Jackson v. Cintas Corp., 425 F.3d 1313, 1316 (11th Cir. 2005).

First, we are unpersuaded by Slater's claim that she established a prima facie case of pregnancy discrimination by showing that she was subject to a higher standard than her predecessor, and that Progress Energy had failed to follow its discipline policy when it terminated her. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of

3

employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). "The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." Armindo v. Padlocker, Inc., 209 F.3d 1319, 1320 (11th Cir. 2000). Additionally, "decisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act." Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1389 (11th Cir. 1998).

"In evaluating disparate treatment claims supported by circumstantial evidence, we use the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). "Under [the McDonnell Douglas] framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." Id. A plaintiff may establish a prima facie case of discrimination by showing that: (1) she is a member of a group protected by Title VII; (2) she was qualified for the position or benefit sought; (3) she suffered an adverse effect on her employment; and (4) she suffered from a differential

4

application of work or disciplinary rules.  Spivey v. Beverly Enterprises, Inc., 196 F.3d 1309, 1312 (11th Cir. 1999).

"When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation omitted).  On the other hand, "[a] plaintiff alleging pregnancy discrimination need not identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her." Armindo, 209 F.3d at 1321.

In this case, Slater has not shown that she was held to a higher standard than her predecessor.  Like her predecessor, Slater was expected to administer vision tests and accurately report the results.  However, the record shows that Slater made a critical error in improperly administering a vision test, unlike her predecessor. Further, contrary to her claim, Slater was not held responsible for reading and interpreting an applicant's medical history, because, as the record shows, her supervisor responded to Slater's error by asking the nurses to observe Slater and ensure that she knew how to perform the examinations, indicating that her supervisor clearly felt that Slater erred in conducting the vision test itself.

The record further shows that Progress Energy began disciplining Slater before her pregnancy about her absences and other performance issues with both verbal counseling and in an e-mail. In addition, Progress Energy did not violate its discipline policy when it terminated Slater because the evidence shows that levels of discipline could be skipped for serious offenses, and Slater's critical error in administering the vision test was a serious offense. Thus, Slater has not established a prima facie case of pregnancy discrimination.

Nor do we find any merit to Slater's claim that Progress Energy's reason for her termination was pretext for pregnancy discrimination because she was never disciplined before she announced her pregnancy, she was set-up to commit a critical error in the COA's vision test, Progress Energy gave conflicting reasons for her termination, and Progress Energy destroyed relevant documents belonging to Slater's supervisor. "If the plaintiff [establishes a prima facie case of discrimination], then the defendant must show a legitimate, non-discriminatory reason for its employment action." Burke-Fowler, 447 F.3d at 1323. If the defendant's reason is legitimate and non-discriminatory, "then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." Id.

Even assuming Slater established a prima facie case, she has not shown pretext on this record. First, as noted, Slater was counseled about her absences before she

6

announced her pregnancy, and she failed to show that her performance issues and Progress Energy's concerns about those issues only began after her pregnancy announcement. Second, despite Slater's claim that the COA's medical records were altered, the record shows that Slater was not terminated for misreading the medical records, but rather was terminated for improperly administering the applicant's vision test, and Slater's speculations about Progress Energy's actions following her critical error do not amount to evidence of a plan to discriminate. Third, the record shows that Progress Energy always maintained that its reasons for Slater's termination were because of her performance issues and her critical error in the vision test. Finally, Slater has failed to explain how Progress Energy's destruction of documents showed a pretext for pregnancy discrimination.

We also reject Slater's claim that her termination was in retaliation for an e-mail in which she had complained about her supervisor's pregnancy discrimination less than a month before she was terminated. Title VII prohibits an employer from retaliating against an employee for filing a charge or reporting discrimination. 42 U.S.C. § 2000e-3(a). A retaliation claim is also analyzed under the McDonnell Douglas framework. Goldsmith v. City of Artmore, 996 F.2d 1155, 1162-63 (11th Cir. 1993).

The Florida Whistleblower's Act provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). In analyzing retaliation claims under the FWA, courts may apply the analysis used in Title VII retaliation cases. See Sierminski v. Transouth Financial Corp., 216 F.3d 945, 950 (11th Cir. 2000) ("In the absence of any guiding caselaw, the district court correctly applied the analysis in Title VII retaliation cases."). Thus, to make a prima facie case for retaliation, the plaintiff may show: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. Sullivan v. National R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999).

A "close temporal proximity" between the employee's protected activity and adverse actions may be sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000). However, "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse

employment action does not suffice to show causation." Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006).

Here, because Progress Energy did not discriminate against Slater, she had no violation of the law to complain about under the FWA, and therefore she was not subject to retaliation. Fla. Stat. § 448.102(3). As for her reliance on the e-mail in which she allegedly had complained about her supervisor's pregnancy discrimination, a plain reading of the e-mail reveals that it was not a complaint, but rather a reassurance that Slater's pregnancy would not cause Progress Energy any problems. Moreover, the close temporal proximity between Slater's e-mail and her termination did not create a causal link between the two because the record shows that Slater's supervisor had already contemplated Slater's termination. Drago, 453 F.3d at 1308.

Likewise, we find no merit in Slater's claim that the district court abused its discretion when it allowed the use of the COA's confidential medical records in Progress Energy's summary judgment motion but denied Slater the opportunity to depose the COA. The Federal Rules of Civil Procedure provide for required disclosure of materials that a party will use to support its claims or defenses:

> a party must, without awaiting a discovery request, provide to the other
> parties . . . a copy -- or a description by category and location -- of all
> documents, electronically stored information, and tangible things that
> the disclosing party has in its possession, custody, or control and may

9

use to support its claims or defenses, unless the use would be solely for impeachment . . .

Fed.R.Civ.P. 26(a)(1)(A)(ii).

The Federal Rules of Civil Procedure further set forth the consequences of noncompliance with Rule 26(a):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c)(1).

In this case, the district court's protective order admitting a redacted version of the COA's medical records was not an abuse of discretion. Indeed, Slater has not shown that Progress Energy's delay in producing the documents violated any rule of civil procedure. Nor has she shown that the exclusion of the records and the deposition of the COA would have shown that her supervisor had not actually believed that Slater had erred in administering the vision test, or that the district court's denial of discovery otherwise resulted in substantial harm to her case. <u>Leigh</u>, 212 F.3d at 1219.

Finally, we reject Slater's argument that the district court abused its discretion by denying Slater further discovery once she learned that Progress Energy had purged

e-mails and documents belonging to Slater's supervisor. Rule 56(f) of the Federal Rules of Civil Procedure, before it was amended on December 1, 2010, provided:

> If a party opposing [a summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken . . .

Fed.R.Civ.P. 56(f)(2) (2010). "A Rule 56(f) motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." Harbert Intern., Inc. v. James, 157 F.3d 1271, 1280 (11th Cir. 1998). "The party seeking to use rule 56(f) may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 843 (11th Cir. 1989) (quotations omitted).

> The Code of Federal Regulations states that,

> [i]n the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination. Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII or the ADA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.

29 C.F.R. § 1602.14.

The record here shows that the district court did not abuse its discretion in denying Slater's request for further discovery regarding Progress Energy's e-mail purge. For starters, she waited over a month after learning about the purge to request further discovery, and the request was therefore untimely. And in any event, Slater's request vaguely claimed that undiscovered evidence relating to Slater's discrimination claim had been purged, and failed to set forth with particularity the facts that she expected to discover in relation to the e-mail and document purge. Harbert Intern., Inc., 157 F.3d at 1280. Accordingly, we affirm.

**AFFIRMED.**