[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11263
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 27, 2012
JOHN LEY
CLERK

D. C. Docket No. 5:09-cv-01954-IPJ

KENDYL GRACE,

Plaintiff-Appellant,

versus

ADTRAN, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 27, 2012)

Before EDMONDSON, HULL, and BLACK, Circuit Judges.

PER CURIAM:

Kendyl Grace, through counsel, appeals the grant of summary judgment in

favor of her former employer, Adtran, Inc., in Grace's employment suit, filed

pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), and to the Family and Medical Leave Act of 1993 ("FMLA"). No reversible error has been shown; we affirm.[1]

In her complaint, Grace alleged that Adtran discriminated against her because she was pregnant and that Adtran interfered with her FMLA rights.[2] Grace worked in Adtran's Distribution Center, a warehouse where employees were responsible for receiving, for inventorying, and for redistributing raw materials used in the design and the manufacture of telecommunications equipment. All Distribution Center employees were required to be able to lift up to 35 pounds.

Grace applied for FMLA leave to attend pregnancy-related doctors' appointments and to recover after delivery. In her FMLA medical certificate, Grace's doctor also noted that Grace was restricted to lifting no more than ten pounds.[3] Shortly after Grace filed her FMLA request, an Adtran human resources representative told Grace that no available jobs existed that would accommodate

---

[1] We review de novo the district court's grant of summary judgment. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007). And we view the evidence in the light most favorable to the non-moving party. Id.

[2] Grace also raised an FMLA retaliation claim, but expressly abandons that claim on appeal.

[3] Although Grace's doctor did not explain the reason for the lifting restriction, the record establishes that Grace had a pre-existing umbilical hernia that might have been exacerbated by her pregnancy.

her lifting restriction and her pregnancy. He then placed Grace on FMLA leave. Grace remained subject to the ten-pound lifting restriction throughout her FMLA leave. When Grace's FMLA leave expired -- only a few days after the birth of her child -- Adtran placed Grace on unpaid general leave for three months. In doing so, Adtran notified Grace that she would be terminated if she remained unable to return to work after three months. Because Grace was still unable to lift more than ten pounds when her general leave expired, Adtran terminated her employment.

We agree with the district court's conclusion that Grace failed to present direct evidence of pregnancy discrimination. Although Grace now asserts that her direct supervisor, Lonna Tittle, told her that Adtran did not have a job for her because she was pregnant, Grace stated expressly -- both in her declaration with the Equal Employment Opportunity Commission and in her complaint -- that Tittle told her "that she was being laid off due to her lifting restrictions, and . . . could not return to work until she was without any restrictions." Given the discrepancy in Grace's story and that Tittle was a non-decisionmaker who lacked authority either to place Grace on FMLA leave or terminate her, Grace has failed to provide direct evidence of pregnancy discrimination. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (stating that "remarks by non-decisionmakers . . . are not direct evidence of discrimination").

Absent direct evidence, Grace must establish a prima facie case of pregnancy discrimination based on circumstantial evidence by showing that "(1) she is a member of a group protected by Title VII; (2) she was qualified for the position . . . ; (3) she suffered an adverse effect on her employment; and (4) she suffered from a differential application of work or disciplinary rules." Spivey v. Beverly Enters., Inc., 196 F.3d 1309, 1312 (11th Cir. 1999).[4] In evaluating pregnancy discrimination claims, we use the same analysis as we do in other Title VII sex discrimination suits. Armindo v. Padlocker, Inc., 209 F.3d 1319, 1320 (11th Cir. 2000).

We first conclude that Grace failed to establish that she was qualified for her job. The record establishes that all positions at Adtran's Distribution Center required the ability to lift up to 35 pounds and that Grace was subject to an indefinite 10-pound lifting restriction. Thus, so long as Grace's lifting restriction was in place, she could not meet the qualifications for her position. See Spivey,

---

[4]Relying on this Court's decision in Schoenfeld v. Babbitt, 168 F.3d 1257, 1268 (11th Cir. 1999), Grace argues that she should not be required to satisfy these prima facie elements because she has established "proof of actions taken by the employer from which [a jury could] infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." In Schoenfeld, however, we limited this alternative method of proof to "cases where the evidence does not fit neatly into the classic prima facie case formula." See id. Because Grace's case fits the classic formula for demonstrating pregnancy discrimination, we reject Grace's argument and apply that formula to her appeal.

4

196 F.3d at 1312 (noting that an employee was no longer qualified for her position because her lifting restriction "clearly prevented her from performing the responsibilities required of [her] position").[5]

We also conclude that Grace failed to demonstrate that she was treated differently from similarly situated non-pregnant employees who had lifting restrictions. Although Grace identified other employees who she asserts were permitted to continue working despite having lifting restrictions, none of these employees were similarly situated. Whereas Grace had a ten-pound lifting restriction of unlimited duration, the potential comparators she identified had lifting restrictions either that permitted them to lift more than ten pounds or that lasted less than six weeks. Because Grace has failed to establish either that she was qualified for her job or that she suffered a differential application of work rules, she has failed to establish a prima facie case of pregnancy discrimination.

We next address Grace's FMLA claim, in which she asserts that Adtran interfered with her FMLA rights. "To state a claim of interference with a substantive right [under the FMLA], an employee need only demonstrate by a

---

[5]That Grace had already worked for several months while subject to a 15-pound lifting restriction does not change our analysis. First, during that period, Grace worked in lighter-duty positions that required less heavy lifting and -- when Grace was terminated -- such lighter-duty positions were unavailable. Second, Grace's capabilities were significantly more limited with a 10-pound lifting restriction than they had been with a 15-pound lifting restriction.

preponderance of the evidence that [s]he was entitled to the benefit denied." Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206-07 (11th Cir. 2001).

Under the FMLA, an eligible employee is entitled to up to 12 weeks of leave each year because of the birth of the employee's child or because of a "serious health condition" that makes the employee unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(A), (D). Following such leave, an employee is entitled to return to her position or its equivalent unless she "is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition." 29 C.F.R. §§ 825.214, 825.216(c). An essential function is a "fundamental job dut[y] of the [plaintiff's] employment position," as evidenced by the employer's judgment, written job descriptions, the amount of time spent performing the function, and the consequences of allowing the plaintiff not to perform the function. See 29 C.F.R. § 1630.2(n)(1), (3).

Grace has failed to demonstrate that she was denied a benefit to which she was entitled. Adtran granted her 12 weeks of FMLA leave as a result of her lifting restriction. Because Grace was still restricted from lifting more than 10-pounds at the end of her FMLA leave, she remained unable to perform an essential function

6

of her position and, thus, was unentitled to return to her position. And contrary to Grace's assertions, nothing in the FMLA entitles an employee to determine the start date of her FMLA leave. See Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1236 (11th Cir. 2010) (stating that "the right to commence FMLA leave is not absolute"). Moreover, the federal regulations contemplate that -- in the case of a pregnant woman -- "[c]ircumstances may require that FMLA leave begin before the actual date of birth of a child . . . if her condition makes her unable to work." 29 C.F.R. § 825.120(a)(4). We see no interference with Grace's rights under the FMLA.

Grace also raises an FMLA interference claim based on a theory of involuntary leave, in which she asserts that Adtran forced her to take FMLA leave even though she did not have a "serious health condition" that prevented her from working. This Court has not yet addressed whether an involuntary leave theory is actionable under the FMLA. We decline to do so in this case because --even under such a theory -- Grace has failed to demonstrate that her claim would be ripe for review. The only circuit to adopt an involuntary leave theory has determined that an employee's claim "ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past." See Wysong v. Dow Chem. Co., 503 F.3d

7

441, 449 (6th Cir. 2007). Because Grace failed to request additional FMLA leave after Adtran allegedly forced her to take her FMLA leave prematurely, her claim would not be ripe.

AFFIRMED.